556 A.2d 31

Ivan S. Snyder, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 7, 1989, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Foster S. Goldman, Jr.,* with him, *Timothy F. Burke, Berkman, Ruslander, Pohl, Lieber & Engel,* for petitioner.

*Edward P. Carey,* Regional Counsel, for respondent.

OPINION BY JUDGE PALLADINO, March 30, 1989:

Ivan S. Snyder (Appellant), on behalf of his brother, Jay Snyder, appeals a decision of the Department of Public Welfare (DPW) that Jay is not eligible for Medical Assistance benefits.

Jay is 55 years old and resides at Kutztown Manor Nursing Home. Jay was admitted to Kutztown in June 1985 after being injured in an automobile accident. From June 1985 until July 1987, Jay received MA benefits that covered the cost of his care. DPW discontinued Jay's MA benefits in July 1987 because it claimed resources were available to him in excess of the limits permitted for receipt of MA benefits.[1]

The resources that DPW claimed were available to Jay were the assets of a trust established by Jay's mother, Sallie A. Snyder, for the benefit of Jay and his sister Ethel Snyder.[2] Sallie executed her will in January 1985. In it she established a trust and directed that the income from the trust be used for the support of Jay and Ethel during their lives. She further directed that the trustee use as much of the principal as he, in his discretion, felt necessary for the care, support and maintenance of Jay and Ethel.[3] Sallie died in 1986.

---

[1] 55 Pa. Code §§177.73 and 177.83 deal with the resources that are to be considered in determining whether a person is eligible for categorically needy or medically needy MA benefits.

[2] Appellant testified that Jay is an invalid, N.T. at 11, and that Ethel is "totally incapable of taking care of herself as far as working for a living." N.T. at 12. Neither has been determined to be mentally handicapped.

[3] The will states, in pertinent part:

All the rest, residue and remainder of my estate . . . I give, devise and bequeath to my son, Ivan S. Snyder, as Trustee, to hold, manage, administer, invest and reinvest . . . *to pay to and use as much of the net income as may be necessary or desirable for the support, maintenance and care* of my daughter, Ethel J. Snyder, and my son, Jay W. Snyder, for and during their joint lives and the lifetime of the survivor,

Appellant reapplied for benefits for Jay on December 11, 1987. The application was submitted after Appellant became aware of the Pennsylvania Supreme Court decision in *Lang v. Department of Public Welfare*, 515 Pa. 428, 528 A.2d 1335 (1987), issued on July 13, 1987. In *Lang*, the Supreme Court determined that a discretionary trust, established by a father's will to provide support for his mentally handicapped son William, was not an available resource for purposes of determining MA eligibility.[4]

A hearing on the application was held on April 25, 1988. The hearing officer determined that the trust established by Sallie's will was an available resource of Jay's and that Jay's available resources were in excess of DPW limitations.[5] This decision was affirmed by DPW's Office of Hearings and Appeals and, on reconsideration, by the Secretary of DPW.

On appeal to this court, Appellant contends that DPW erred in determining that the trust at issue in this case was an available resource of Jay's such as would disqualify him from the receipt of MA benefits. For the

---

*as well as so much of the principal as in the Trustee's discretion may be necessary or desirable for the support, maintenance and care of my two children,* Ethel and Jay.
Record item 4 (emphasis added).

[4] 54 Pa. Code §177.82 defines "available resources" as "[r]esources that the family unit has or can use to meet the cost of services provided under MA. When resources are owned jointly with one or more persons, each will be considered to own an equal share unless the document of ownership specifies otherwise."

[5] The record indicates that at the time of application for MA benefits, the trust fund contained approximately $225,000 and that $19,000 was in the trust checking account. Record item 2. There is no indication of what amount of this money constitutes income. DPW indicates, and Appellant does not dispute, that the allowable limits for nursing home care, under MA at that time, were $1800 for categorically needy recipients and $2400 for medically needy recipients.

reasons that follow, we hold that one half of the trust income, but none of the principal, is an available resource of Jay's, necessitating us to order the DPW decision vacated and the case remanded for a determination of whether Jay qualifies for MA benefits.

Resolution of this case is controlled by the Pennsylvania Supreme Court decision in *Lang*. DPW asserts that *Lang* is not controlling because the MA applicant in *Lang*, William, was in a state mental institution and receiving care funded under the Mental Health and Mental Retardation Act (Mental Health Act), Act of October 20, 1966, P.L. 96, *as amended,* 50 P.S. §§4101-4704. We note that the Supreme Court did refer to the 1974 amendment to section 502 of the Mental Health Act, removing the liability for public funds expended on the behalf of a mentally disabled person from those with a legal duty to support the person when the person reaches the age of 18, in determining that the trust in *Lang* was not an available resource. Consideration of the Mental Health Act was necessitated because, prior to 1974, the trust in *Lang* had a legal duty to provide support to William.

The Supreme Court's decision that the trust in *Lang* was not an available resource for MA eligibility purposes was independent of its determination that the trust had no legal duty to provide support to William.[6] In making the determination of whether a support trust is an available resource to an MA applicant, the Supreme Court set forth the following test:

> We must still determine whether a settlor, here the testator, intended that the trust assets be used

---

[6] William's father, settlor of the trust, died in 1968. The Supreme Court noted that his legal obligation to support William ended when he died and that if he were alive today, he would not be obligated to support William.

to support a beneficiary, *regardless of the availability of other resources, including state assistance.* A settlor's intent must be determined 'from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument.'

*Lang,* 515 Pa. at 441-42, 528 A.2d at 1342 (emphasis added) (quoting *Farmers Trust Co. v. Bashore,* 498 Pa. 146, 150, 445 A.2d 492, 494 (1982)). The Supreme Court rejected the possibility that "it is in a beneficiary's interest not to be 'forced to resort to public welfare,' " and stated: "The statutory policy of Pennsylvania . . . does not reflect this vision of public assistance as charity and the consequent assumption that a settlor intended to exhaust his family's patrimony before his beneficiary could take advantage of public funds." *Id.* at 441, 528 A.2d at 1342. The determination of whether a trust is an available resource can only be made by evaluating each trust instrument and the circumstances surrounding its execution to determine the intent of the settlor.

The Supreme Court found the following aspects of the trust instrument and the attendant circumstances in *Lang* as indicating that the settlor *did not* intend the trust assets to be used to support William regardless of the availability of other resources: (1) the trust was set up to benefit all of the settlor's children; (2) the trustee was given discretion to determine what portion of the trust income was necessary for William's support and discretion to invade the principal, if necessary, for William's support; (3) the trust principal included the bulk of the settlor's estate; and (4) during his life, settlor accepted Commonwealth's help in paying the cost of maintaining William in a state mental institution. The Supreme Court held that "testator intended this trust to supplement

other resources available to William and to provide for his basic support only to the extent such other resources should prove inadequate or be discontinued." *Id*. at 444, 528 A.2d at 1344. The situation in the case at bar, with respect to the trust principal, is analogous.

The trust in this case was set up to benefit all of Sallie's children or their issue.[7] The trustee was given the discretion to use "so much of the principal" as he believed "may be necessary or desirable for the support, maintenance or care" of Jay *and* Ethel. The corpus of the trust was the bulk of Sallie's estate.[8] Also of importance is the fact that Jay was receiving MA benefits prior to Sallie's death and the creation of the trust. These factors lead us to conclude that Sallie did not intend the trust principal to be invaded for Jay's support as long as state assistance was available.[9]

We cannot reach the same conclusion with respect to the net income generated by this trust. The trust instrument clearly directs the trustee to use net income for the support, maintenance and care of Jay and Ethel. Unlike

---

[7] The remainder of the trust, upon Jay and Ethel's death, was to be distributed one half to her deceased son's issue per stirpes and one half to Appellant, Jay's twin brother, or if deceased, his surviving issue per stirpes.

[8] Sallie's will contained three $5000 bequests to the issue of her deceased son but provided that these amounts were to be deducted from their half of the remainder of the trust prior to distribution.

[9] DPW relies heavily on this court's decision in *Stoudt v. Department of Public Welfare*, 76 Pa. Commonwealth Ct. 576, 464 A.2d 665 (1985), to support its position that Sallie did not intend state assistance to be used for Jay's support prior to the exhaustion of all the trust assets to which he was entitled. *Stoudt* is distinguishable. While the trustee was given discretion to use the income and principal as he deemed necessary for the maintenance and support of the testator's daughter, the trust instrument clearly indicates that the support of the testator's daughter was the purpose of the trust by stating that upon his daughter's death, the trust assets *if any* were to be distributed to the remainderman.

the trustee in *Lang* who was given the discretion to distribute or accumulate income not necessary for William, Appellant, the trustee here, was directed to use the net income for the support of Jay and Ethel. The more difficult question with respect to the income is determining how it should be allocated as between Jay and Ethel. DPW regulations require that when resources are owned jointly, each person will be considered as owning an equal share, unless the document of ownership indicates otherwise. 55 Pa. Code §177.82. This would indicate that one half of the net income of the trust should be allocated to Jay. We would hesitate, even with the regulation, to order this allocation without knowing Ethel's needs. However, Appellant offered at oral argument to assign one half of the net income to Jay if we were to decide that Jay's portion of the net income must be considered as an available resource in determining Jay's eligibility for MA benefits.

Review of the record in this case discloses no information with respect to the actual net income of the trust.[10] The only issue considered by DPW was whether all the assets of the trust, income and principal, were an available resource to Jay. Accordingly, we must vacate DPW's decision that Jay is ineligible for MA benefits and remand the case for further proceedings in accordance with this opinion.

ORDER

AND NOW, March 30, 1989, the decision of the Department of Public Welfare in the above-captioned matter is vacated and the case remanded for further proceedings in accordance with this opinion.

Jurisdiction relinquished.

---

[10] *See supra* note 5.