598 A.2d 1283

**Ivan S. SNYDER, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1991.

Decided Nov. 6, 1991.

Edward P. Carey, Jean E. Graybill, Asst. Counsels, John A. Kane, Chief Counsel, Harrisburgh, for appellant.

Foster S. Goldman, Jr., Pittsburgh, for Ivan S. Snyder.

Jon Pushinsky, Mark J. Murphy, Pittsburgh, amicus—Ass'n for Retarded Citizens.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

This appeal is by allowance from an order of the Commonwealth Court reversing a decision of the Commonwealth Department of Public Welfare (Department). 124 Pa.Cmwlth. 511, 556 A.2d 31. The Department had refused medical assistance benefits to one Jay Snyder on the basis that he was a trust beneficiary and, as such, had resources in excess of the Department's eligibility limit.

Jay Snyder was named as a beneficiary, along with his sister, under his mother's will dated January 23, 1985. A trust was contained in the residuary clause of the will and provided in relevant part:

All the rest, residue and remainder of my estate of whatsoever nature and wheresoever situate I give, devise and bequeath to my son, Ivan S. Snyder, as Trustee, to hold, manage, administer, invest and re-invest in such investments as to the Trustee may seem proper without limiting the Trustee to what are known as "legal investments", and to demand, collect and receive the dividends,

interest and income therefrom, and after deduction of all proper charges and expenses, to pay to and use as much of the net income as may be necessary or desirable for the support, maintenance and care of my daughter, ETHEL J. SNYDER, and my son JAY W. SNYDER, for and during their joint lives and the lifetime of the survivor, as well as so much of the principal; as in the Trustee's discretion may be necessary or desirable for the support, maintenance and care of my two children, Ethel and Jay. It is my desire that, so long as it is practical, my Trustee shall maintain intact my home and furnishings therein in Bally, Pennsylvania, for the benefit of and as a residence for my children, Ethel And Jay.

B. Upon the death of the survivor of my children, Ethel J. Snyder and Jay W. Snyder, I give, devise and bequeath one-half (½) of the remaining principal and undistributed income of the trust to the children of my deceased son, Harold Snyder, to be divided equally among them. These grandchildren are: GLENN W. SNYDER, GAIL A. BETHARD, and NEIL H. SNYDER. From each child's share shall be deducted the sum of Five Thousand Dollars ($5,000.00) which each child received at the time of my death. In the event any of these three grandchildren of mine should not be living at the time of the death of the survivor of my daughter, Ethel, and my son, Jay, but shall have died leaving issue surviving at the time of the death of the survivor of my daughter, Ethel, or my son, Jay, then that grandchild's share shall be distributed among that grandchild's then living issue in a per stirpes distribution. If any of such grandchildren shall have died without leaving issue surviving at the time of the death of the survivor of my daughter Ethel, or my son Jay, then such grandchild's share shall be distributed among the remaining of the three named grandchildren or the issue of a deceased grandchild in a per stirpes distribution.

C. The remainder of the principal and undistributed income in the trust I give, devise and bequeath to my son,

IVAN S. SNYDER. In the event my son, Ivan S. Snyder, should not be living at the time of the death of the survivor of my daughter, Ethel, or my son, Jay, then I give, devise and bequeath this share to his issue living at that time in a per stirpes distribution.

FOURTH: None of the principal or income of the trust herein created while in the hands of the Trustee shall be subject to attachment and execution or sequestration for any debt, contract or obligation or liability of any beneficiary and shall not be subject to pledge, assignment, anticipation or conveyance.

Any income or principal which may under the terms and provisions hereof become payable to any incompetent beneficiary, whether legally adjudicated incompetent or otherwise, or to a minor beneficiary, shall during said minority or said incompetency be held and expended by the Trustee directly and without the intervention of a guardian to or for the benefit of the incompetent or minor beneficiary for the support, maintenance and education of said beneficiary.

*    *    *    *    *    *

In June, 1985, approximately five months after the will was executed, Jay Snyder was struck by an automobile, necessitating his placement in a nursing home, where he resides to this day. The testatrix passed away in 1986. Jay Snyder was in receipt of Nursing Home Care benefits from the date of his accident until July, 1987, when the Department terminated his benefits. The justification for the termination given by the Department was that the income and principal from the above described trust were resources available to him, thereby making him ineligible to receive benefits.[1] The trustee, Ivan Snyder, did not challenge the decision of the Department at that time.

1. At the time of this decision the applicable resource limitation was 1800 dollars for "non-money payment medical assistance" and 2400 dollars for "medically needy only medical assistance," pursuant to §§ 177.73 and 177.78 of the Pennsylvania Code, 55 Pa.Code §§ 177.73; 177.78. A resource is defined as any "real or personal property which a person has or can make available for partial or total support,

On July 13, 1987, this Court handed down its decision in *Lang v. Commonwealth, Department of Public Welfare,* 515 Pa. 428, 528 A.2d 1335 (1987), wherein we refused to allow the Department to deny benefits under the Mental Health and Mental Retardation Act[2] to a beneficiary of a discretionary trust.

In December, 1987, subsequent to our decision in *Lang v. Commonwealth Department of Public Welfare, Id.,* the trustee re-applied for benefits on behalf of Jay Snyder, claiming that *Lang* was determinative of his eligibility to receive benefits. The Department conducted an administrative hearing, but ultimately the request of the trustee was denied. The trustee appealed this decision to the Commonwealth Court. That court reversed in part and affirmed in part, concluding that the trust language was discretionary as to principal, but mandatory as to income. Consequently the court held that the trust income constituted an available resource, but not the principal. From this decision the Department sought allowance of appeal, which was granted.[3]

The Department now raises the following issues: whether the trustee of a discretionary support trust may, without affecting the beneficiary's entitlement to medical assistance, refuse to pay for nursing home care for the trust beneficiary; whether the Commonwealth should have ordered the taking of testimony concerning the actual intention of the testator/settlor; and whether the Commonwealth Court erred in inquiring into the circumstances

including equitable interests and partial interests," 55 Pa.Code § 178.2; and an applicant for medical assistance is required to "take reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so," 55 Pa.Code § 178.1(g).

2.  Act of October 20, 1966, Special Session, No. 3, P.L. 96 Art. 1 § 101, 50 P.S. § 4101 *et seq.*

3.  The trustee did not seek allowance of appeal from that part of the Commonwealth Court's decision which declared the trust income to be an available resource. Consequently, that issue is not before us.

surrounding the execution of the trust absent some ambiguity in the trust language.[4]

Before proceeding further in this matter we must first discuss the scope of this Court's decision in *Lang v. Commonwealth, Department of Public Welfare*, 515 Pa. 428, 528 A.2d 1335 (1987). The situation presented in *Lang* was that a deceased father had set up a trust for the benefit of his children, one of whom was mentally retarded. That child was a resident of a state mental retardation center and as such the recipient of financial assistance through the Department of Public Welfare, under funding supplied by the Mental Health and Mental Retardation Act.[5] The operative language of the trust stated as follows:

A. The Trustee shall hold, manage, invest and reinvest said Trust estate and shall distribute the net income (hereinafter called 'Income') and principal from time to time as follows:

(1) During the lifetime of my son, WILLIAM GEORGE LeVISEUR, if he survives me, the Trustee shall pay the Income periodically to or for the support, maintenance, welfare and benefit of my said son *or may, in the Trustee's discretion, add part or all of the Income to principal, to be invested as such.*

(2) The Trustee *may distribute such part of the Income not necessary for the support of my son,* in equal shares to my three children, MARGARET MARY SMITH, EDWARD JOHN LeVISEUR, JR. and ELIZABETH ELLEN LANG, or to the survivor or survivors of them,

---

4. These latter two issues challenge the methodology of the Commonwealth Court's analysis into discerning the intent of the testator. In *Lang v. Commonwealth, Department of Public Welfare*, 515 Pa. 428, 528 A.2d 1335 (1987), we relied upon the case of *Farmers Trust Co. v. Bashore*, 498 Pa. 146, 445 A.2d 492 (1982) to define the proper analysis, to wit: A settlor's intent must be determined "from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstance surrounding the execution of the instrument." *Id.,* 498 Pa. at 150, 445 A.2d at 494 (1982). The Commonwealth Court properly complied with this standard and we find no need to further address the Department's arguments on these issues.

5. *Supra,* fn. 2.

provided however, should any of my said children prede-cease me, or surviving me die prior to the termination of the Trust Estate leaving issue, such deceased child's then living issue shall take the deceased parent's share, per stirpes.

(3) The Trustee shall use so much of the principal as may in her opinion be advisable therefor, for the support, maintenance, welfare, comfort and support of my son, WILLIAM GEORGE LeVISEUR. *The Trustee shall have complete discretion as to how much shall be used for such purposes* and may pay the sums to any person or institution having the care of my said son, without liability on the part of the Trustee to see to the applica-tion thereof, or directly to or for the benefit of my said son. In the event of the death of my said son, the Trustee is authorized, in her discretion, to pay any part or all of the funeral and burial expenses of my said son.

(4) At the death of my said son, WILLIAM GEORGE LeVISEUR, the Trust shall terminate and the balance of the Trust Estate shall be distributed in equal shares, free and discharged of the Trust, to MARGARET MARY SMITH, EDWARD JOHN LeVISEUR, JR. and ELIZA-BETH ELLEN LANG, or to the survivor or survivors of them, provided however, should any of my said children now so surviving, leave issue, such deceased child's then living issue shall take the deceased parent's share, per stirpes.

*Lang,* 515 Pa. at 438–39, 528 A.2d at 1340–41. (emphasis in original).

The critical issue to be resolved in *Lang* was "[w]hether [the] testator created a duty in [the] trustee, independent of any statutory duty, to provide for [the child's] basic sup-port." *Id.,* 515 Pa. at 435, 528 A.2d at 1339. In resolving that issue the Court focused on one primary factor, that being the intention of the settlor who created the trust; and in the view of the Court in *Lang:* "If [the] testator gave trustee discretion to consider funding otherwise available from the Commonwealth in determining whether to distrib-

ute trust income or principal (or either) for [the child's] support, the trust (or its income or principal) would not be available for [the child's] use and could not be considered his asset or resource." (citation omitted) *Id.*

The Court then examined the language of the trust and held that the language of the trust there at issue gave considerable discretion to the trustee, and that compelling the trustee to make disbursements for the child would benefit only the Commonwealth, as opposed to the child and the other life beneficiaries of the trust; and that such an interpretation would nullify the testator's intent. *Id.*, 515 Pa. at 447, 528 A.2d at 1345.

Turning to the facts of this case, it is apparent from the four corners of the trust instrument that the testator/settlor intended the trustee to care for both of her children.[6] Moreover, it is undisputed that at the time of her death Jay had been receiving public benefits for a number of months. The latter fact indicates to us an awareness on the part of the testator/settlor of the availability of these benefits.

In applying the *Lang* standard of intent we must be ever mindful of the manner in which the settlor intended the trustee to act, as well as the manner in which the settlor intended the trust to impact on the beneficiaries. Since in the present case Mrs. Snyder created a trust with two life beneficiaries, neither of whom's needs were to be considered dominant, the trustee was required to carefully consider how his actions toward one beneficiary would affect the other;[7] and he could not justifiably act to benefit

6. It should be noted that Mr. Snyder's sister, Ethel, has special problems also; and, although not herself receiving benefits from the Commonwealth, nonetheless requires special attention which the trustee testified is his responsibility.

7. The responsibility which a trustee owes to the trust beneficiaries is the basic foundation of any trust relationship. *In Re Union Real Estate Investment Co.*, 331 Pa. 569, 1 A.2d 662 (1938). In the case of multiple beneficiaries the trustee is under a duty to deal impartially with them. See Scott, Law of Trusts Vol. IIA § 183 (4th ed. 1989).

one when to do so would irreparably damage the interest of the other, especially when the alleged benefit bestowed on the first beneficiary was the replication of benefits to which he would be entitled if the trustee exhausted the trust on the second beneficiary.

Furthermore, and perhaps most convincing in evaluating the intent of the settlor, we must look to the effect that the settlor intended the trust to have. Here, Mrs. Snyder, at the time of her death, knew that her son was receiving public benefits. It is difficult if not impossible to believe that Mrs. Snyder intended by her beneficence to deprive her son of that to which he had previously become entitled; and by so doing also deprive her daughter of any benefit from the trust. The latter result would obtain by applying the Commonwealth's theory to its logical conclusion, i.e., since the trustee was to supply Jay Snyder with the necessary funds to pay for his care, and since the trust did not employ a mathematical formula limiting the ability of the trustee to expend for one or the other of the beneficiaries, then once imposed the duty of the trustee to access the trust principal would remain for the life of the trust. Surely the testator/settlor did not intend to effect such consequences.

Therefore, for the above stated reasons, we agree with the Commonwealth Court that the trust principal cannot be considered an available resource.[8]

See also Restatement (second) Trusts § 183 (Duty to deal impartially where trust has two or more beneficiaries).

8. We note that in this appeal the Department has placed great emphasis on the case of *Commonwealth Bank and Trust Co., N.A., v. Department of Public Welfare*, 128 Pa.Cmwlth. 528, 563 A.2d 1299 (1989), a decision which we have reviewed concurrently with the present appeal, and which we have this day affirmed, *Commonwealth Bank and Trust Co., N.A. v. Department of Public Welfare*, 528 Pa. 482, 598 A.2d 1279 (1991). As noted in the opinion which we have this day filed there are distinguishing characteristics in that case which are not present here, the most notable of which is that the trust there had but one life beneficiary whose ability to compel the trustee to act was superior to all of the contingent remaindermen there affected, and for whose benefit the entire amount was specifically bequeathed. In the present case, as was the situation in *Lang, supra,* the trustee was

Accordingly, the order of the Commonwealth is affirmed.[9]

LARSEN, J., concurs in the result.

NIX, C.J., files a dissenting opinion.

NIX, Chief Justice, dissenting.

Relying upon our decision in *Lang v. Commonwealth, Department of Public Welfare*, 515 Pa. 428, 528 A.2d 1335 (1987), the majority concludes that the instant trust cannot be considered a resource for the purpose of determining Jay's eligibility for benefits. At the time of the decision in *Lang*, I had serious reservations as to the wisdom of the result reached therein as evidenced by my vote concurring in the result. The theory adopted in *Lang* is that, in the absence of an express provision requiring states to withhold public monies from mentally disabled persons who are beneficiaries of privately provided financial resources, the release of such monies is governed by the State's public policy with respect to apportioning costs of caring for the mentally disabled. In *Lang* we held that the testamentary trust under consideration provided for discretionary support, permitting the trustee to consider other available resources in determining whether to give principal or income to a mentally disabled beneficiary. Based upon that conclusion, the Court ruled that the principal and income were not available resources of the beneficiary for the purpose of determining his eligibility for medical assistance or his liability to reimburse the Commonwealth for the costs of his care.

In this case, the mother's will provided that the remainder of her estate should be managed by the trustee and used "to pay to and use as much of the net income as may be necessary or desirable for the support, maintenance and

directly accountable to multiple life beneficiaries whose rights to both the principle and income had become realized.

9. We are compelled to remark that the issues raised in this case and others of its kind have far reaching consequences for the people of this Commonwealth, and it seems that the ultimate resolution of these issues can best be debated and resolved within the legislative arena. However, until clearer legislative guidelines are enacted, courts will be confronted with developing guidelines on a case by case basis.

care of ... my son Jay...." The majority, applying the rationale of *Lang*, concludes that the existence of a second beneficiary, Jay's sister, combined with [1] the trustee's duty to determine what funds were "necessary or desirable", indicates the testator's intention that the trustee rely on whatever public funds were available for Jay's care, rather than depleting the trust at the expense of the second beneficiary.

The majority's continued reliance upon the reasoning of *Lang* highlights the error in the Court's focus. Rather than examining the intent of the testator, the Court should concentrate on the resources available to the needy beneficiary under the trust, whether those funds be principal or interest. If the patient independently had sufficient funds to pay for treatment, he would be liable for those costs. See 50 P.S. §§ 4501, 4504(a). Similarly, if a person legally obligated to support a patient could afford to do so, he would not be able to rely on public resources. 50 P.S. § 4502. Thus, if the funds from a trust are sufficient to cover the cost of medical care, those funds should be depleted before resort to public funds is permitted. The existence of multiple beneficiaries should be irrelevant to such a determination; private citizens cannot be permitted to benefit at the expense of the public.

I, therefore, dissent.

---

1. While it is true that the needs of the two beneficiaries were unequal, there is no requirement in the instrument that disbursements be identical.