679 A.2d 767

Estate of Mary ROSENBERG, deceased, Appellant,

v.

DEPARTMENT OF PUBLIC WELFARE, Appellee.

Supreme Court of Pennsylvania.

Argued April 30, 1996.

Decided July 18, 1996.

Jerry B. Chariton, David E. Schwager, Wilkes Barre, for M. Rosenberg.

Edward P. Carey, Pittsburgh, Jean E. Graybill, Harrisburg, Peter Speaks, Pittsburgh, for DPW.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

This case involves the interpretation of a testamentary trust, presenting the question of whether a trustee had discretion to preserve the principal of the trust for the benefit of remaindermen rather than to expend it for the sole life beneficiary, when the latter course would, arguably, benefit only the Department of Public Welfare. The department held that the trustee had no discretion to preserve the trust assets; rather, the assets were a resource available to the life beneficiary, making her ineligible for medical assistance benefits. The Commonwealth Court affirmed. We allowed the appeal to review this determination.

Louis Rosenberg executed a will containing a testamentary trust for his wife. When he died in 1976, he was survived by Mary, his wife, and a son John, who served as trustee. Louis Rosenberg's will bequeathed approximately $157,000 to his widow outright, and $65,000 was placed in the trust. In 1987, Mary Rosenberg's health required her to enter a nursing home. To pay for her care between 1987 and 1992, she expended virtually all of the $157,000 she had inherited. In February, 1992, she applied for medical assistance benefits, commonly known as Medicaid, from public welfare. To qualify, she could have no more than $2,400 in available resources; the Department of Public Welfare ruled that the $55,000

remaining in the testamentary trust created by her husband was an available resource and therefore denied benefits.[1] The Commonwealth Court affirmed the department's denial of benefits.

The trust established in Louis Rosenberg's will was funded with $65,000 at the time of his death, and was solely for the benefit of his widow. The trustee was directed to pay the net income to the beneficiary quarterly, and was authorized, in his "sole discretion, to use principal for the comfort, welfare, and maintenance and support, for educational requirements, medical and surgical expenses, and other unusual needs of" the beneficiary. Following the death of the beneficiary, the remainder of the trust was to pass to the then living issue of the testator, per stirpes. Louis Rosenberg's will also gave $10,000 each to his two grandchildren, Andrew and Lauri Rosenberg, John Rosenberg's children; the gifts were placed in separate trusts until the children reached the age of twenty-five.

Three recent decisions of this court involved precisely the same issue as that presented in this case. Two held that the assets of a discretionary support trust, under the circumstances of the case, were not resources available to the beneficiary while the third, involving contrasting factors, reached the opposite conclusion. Both parties base their arguments on these cases, and the welfare department and the Commonwealth Court based their decisions on their interpretations of the cases.

*Lang v. Commonwealth, Department of Public Welfare*, 515 Pa. 428, 528 A.2d 1335 (1987), involved a trust for the benefit of four of the testator's children including a mentally retarded son. The trustee was instructed to pay for the son's support, maintenance, welfare, and benefit so much of the income as the trustee, in her discretion, deemed necessary. She was also empowered to "use so much of the principal as may in her opinion be advisable therefor, for the support, welfare, comfort and support [sic] of my [mentally retarded] son.... The

---

1. On January 22, 1993, while her application was pending in the welfare department, Mary Rosenberg died and her estate was substituted as a party.

trustee shall have complete discretion as to how much shall be used for such purposes. . . ." *Id.* at 438, 528 A.2d at 1340–41.

The court held that the principal of the trust was not an asset available to the son when he sought medical assistance benefits. The court reasoned that "when a support standard is expressed in a trust instrument, the extent of the interest of the beneficiary depends upon the settlor's intent," citing A. Scott, *The Law of Trusts* (3d ed.1967) and "there should be an exact parallelism between the rights of a beneficiary in and to the trust estate and the rights of his creditors to reach his equitable interest in the estate." *Id.* at 435–36, 528 A.2d at 1339. To determine a settlor's intent, we examine "all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument." *Id.* at 441–42, 528 A.2d at 1342, citing *Farmers Trust Co. v. Bashore,* 498 Pa. 146, 150, 445 A.2d 492, 494 (1982).

Several factors were considered to be especially significant in *Lang.* First, the settlor created only one trust to benefit all four of his children. If he had intended the entire principal of the trust to be available for the support of his one handicapped son, so that the entire principal would have to be exhausted before his son could receive state-provided care in the form of medical assistance, he would likely have created a trust for that son alone and separate trusts for his other children. Second, the settlor accepted Commonwealth assistance during his lifetime in the form of partial subsidization of his son's institutional care. We inferred that the settlor intended for his son to continue receiving whatever state assistance he was entitled to, and intended the discretionary trust only to supplement the state assistance. We therefore concluded that the principal of the trust was not an available resource.

The second case involving the same issue is *Snyder v. Commonwealth, Department of Public Welfare,* 528 Pa. 491, 598 A.2d 1283 (1991). It, too, involved a testamentary trust for the benefit of two of the settlor's children: Jay, a disabled son, and Ethel, a daughter. The trustee was directed

to pay to and use as much of the net income as may be necessary or desirable for the support, maintenance and care of [Ethel and Jay], for and during their joint lives and the lifetime of the survivor, as well as so much of the principal as in the Trustee's discretion may be necessary or desirable for the support, maintenance and care of my two children, Ethel and Jay.

*Id.* at 493, 598 A.2d at 1284. Two other sons of the testator, per stirpes, were the remaindermen. The trust also contained a clause preventing the income or principal from being "subject to attachment and execution or sequestration for any debt, contract or obligation or liability of any beneficiary" or "subject to pledge, assignment, anticipation or conveyance." *Id.* at 494, 598 A.2d at 1284.

We again held that the principal of the trust was not an asset available to the disabled son when he sought medical assistance benefits. We considered two factors to be dispositive. First, by creating a trust with two life beneficiaries, the settlor displayed an intention to provide care for both of her children, neither of whose needs were to be considered dominant. We stated that

the trustee was required to carefully consider how his actions toward one beneficiary would affect the other; and he could not justifiably act to benefit one when to do so would irreparably damage the interest of the other, especially when the alleged benefit bestowed on the first beneficiary was the replication of benefits to which he would be entitled if the trustee exhausted the trust on the second beneficiary.

*Id.* at 498–99, 598 A.2d at 1287. Second, and most convincing, the settlor, at the time of her death, knew that her disabled son was receiving public benefits. We found it "difficult if not impossible to believe that Mrs. Snyder intended by her beneficence to deprive her son of that to which he had previously become entitled; and by so doing also deprive her daughter of any benefit of the trust." *Id.* at 499, 598 A.2d at 1287. Thus the principal of the trust was not a resource available to the son.

The third case involving a testamentary trust, a companion to *Snyder, supra,* is *Commonwealth Bank and Trust Co. v. Commonwealth, Department of Public Welfare,* 528 Pa. 482, 598 A.2d 1279 (1991). Unlike the first two cases, it determined that a discretionary trust fund was a resource available to the beneficiary, making her ineligible for medical assistance.

In *Commonwealth Bank,* the beneficiary was the mother of the settlor. The settlor established a trust of $25,000 with the net income to be paid to his mother in quarterly installments. In addition, he authorized his trustees,

> in their uncontrolled discretion, but having in mind the income or principal that may be available to or for her from other sources, to pay over to my Mother so much of the principal of this trust as my Trustees shall deem needful or desirable for her support and maintenance, including medical, surgical, hospital, or other institutional care.

*Id.* at 484, 598 A.2d at 1280. Before the settlor's death, his mother was receiving benefits from a separate inter vivos trust, and when it was exhausted fifteen years after the settlor died, she applied for medical assistance. This was denied, as the department of public welfare deemed the trust assets [2] to be a resource available to the applicant.

In affirming that determination, we carefully distinguished *Lang, supra,* focusing on several factors. First, in *Lang,* the court noted that the legislature had relieved those with a legal duty to support recipients under the Mental Health Act from that duty once the recipient reached the age of eighteen. By contrast, when the *Commonwealth Bank* trust was established, the testator had a legal duty to support his mother. *Id.* at 489, 598 A.2d at 1282, citing section 3 of The Support

---

**2.** We noted that "although the subject trust makes reference to other *'income* or *principal* that may be available' it does not make reference to any other type of resources; and public benefits, while they are a resource, are neither income nor principal." *Commonwealth Bank,* 528 Pa. at 489, 598 A.2d at 1282 (emphasis in original). The "income or principal that may be available to or for her from other sources" was an apparent reference to the inter vivos trust in operation at the time the testamentary trust was created.

Law, 62 P.S. § 1973. Second, the *Lang* trust had four life beneficiaries, whereas the *Commonwealth Bank* trust had only one. The testator "made individual provisions for [his] mother (the subject beneficiary), his spouse, and his children, with the bulk of his assets being devised to the latter two." *Id.* Third, the *Lang* beneficiary was receiving public benefits at the time the trust was created, creating the inference that "the testator 'intended this trust to supplement other resources available to [the subject beneficiary] and to provide for his basic support only to the extent such other resources should prove inadequate or be discontinued.' [*Lang* ], 515 Pa. at 444, 528 A.2d at 1344." *Id.* at 488–89, 598 A.2d at 1282. The beneficiary of the *Commonwealth Bank* trust, on the other hand, never received public benefits during the settlor's lifetime. The court accordingly held that the trust assets were a resource available to the beneficiary so that, unlike the *Lang* and *Snyder* beneficiaries, she was ineligible for medical assistance benefits.

In comparing the salient factors of *Lang, Snyder,* and *Commonwealth Bank* with this case, we observe the following. There is only one life beneficiary, the settlor's widow. During the settlor's lifetime, she received no public assistance. Thus, the considerations of *Lang* and *Snyder* do not apply; rather, this case is virtually indistinguishable from *Commonwealth Bank.* The public welfare department and the Commonwealth Court employed this precise rationale in holding that the trust assets were a resource available to the beneficiary. On its face, the decision appears to be impeccable.

Appellant, however, argues that the foregoing interpretation erroneously and mechanically followed the precedents when the essential inquiry should have been determining the intent of the settlor. Appellant cites the standard utilized in *Lang* and *Snyder* by which a court is to ascertain a settlor's intent: by reference to "all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument." Appellant claims that the Commonwealth Court ignored the testator's scheme of distribution and the surrounding circum-

stances.   Finally, appellant characterizes the decision as rein-carnating "the repudiated contention that access to statutory benefits is shameful," quoting this court's opinion in *Lang, supra,* that

> we reject as a matter of public policy that it is in a beneficiary's interest not to be 'forced to resort to public welfare.'  The statutory policy of Pennsylvania . . . does not reflect this vision of public assistance as charity and the consequent assumption that a settlor intended to exhaust his family's patrimony before his beneficiary could take advantage of public funds.

515 Pa. at 441, 528 A.2d at 1342.

We agree that the fundamental question is the ascertain-ment of the settlor's intent and that such intent cannot be determined merely by mechanically applying the most promi-nent factors discussed in *Lang, Snyder,* and *Commonwealth Bank.* Those factors were not meant to exhaust the possible indications of a settlor's intent.   Nevertheless, they remain persuasive and prominent indicators.

The specific factors appellant claims were overlooked may be summarized as: first, the scheme of distribution created by the testator, and second, evidence of the health of the testator and his wife.

The record indicates that the testator, during his lifetime, established a long-term pattern of gift-giving to his two sons and his two grandchildren—for years, he gave each of them the maximum nontaxable amount permitted under the federal estate and gift tax laws.   He also created inter vivos trusts for the educational expenses of his grandchildren in addition to the testamentary trusts for the grandchildren.   These sub-stantial lifetime gifts, appellant argues, show the testator's "inclination to avoid dissipation of his assets by having them taxed away," as well as his long-standing desire to benefit his issue.   From this it follows, according to appellant, that his intention with regard to the support trust for his wife was that it not be used for her long-term medical care, but that it be preserved for their issue.

Such a conclusion is purely speculative. The lifetime gifts to the sons and grandchildren constitute substantial benefits to his issue and we might reasonably conclude that such completed gifts would have reduced his concern that the sons and grandchildren receive any benefit as remaindermen of his estate. Moreover, the testator's scheme of distribution, dividing the bulk of his estate between an outright gift to his wife and the support trust for his wife, was created to minimize federal estate taxation. Perhaps his entire estate would have been given to his wife outright were it not for the federal estate tax. The testator had the right to leave his wife any amount (subject to the statutory minimum), and had no duty to leave any portion of his estate to their issue. The testator could have made separate bequests to the children and grandchildren if he had a definite intention that they were to receive part of his estate. Alternatively, he could have made them life beneficiaries of the trust along with his wife, which would arguably have brought the trust within the ambit of *Lang* and *Snyder*, where the interests of other life beneficiaries would have precluded expending the entire trust on the widow. He chose not to utilize such possibilities, and we cannot conclude that the testator definitely intended his issue to receive benefits as remaindermen rather than to provide primarily for his wife. We reiterate, however, that such speculation sheds little or no light on the intent of the testator on the issue involved in this case.

Appellant also argues that the testator and his wife enjoyed good health throughout their lifetimes prior to the testator's death in 1976.[3] Appellant argues that "the only

3. Some of the evidence referred to is clearly outside the scope of the inquiry permitted when it is necessary to go beyond the four corners of the trust instrument. Permitting examination of the scheme of distribution and the circumstances surrounding the execution of the instrument itself does not open the door to any and all evidence a party may wish to introduce. In general, a testator's intent is determined by the language of the will, and matters external to the document are inadmissible. *Estate of Taylor,* 480 Pa. 488, 494, 391 A.2d 991, 994 (1978); *Sykes Estate,* 477 Pa. 254, 257, 383 A.2d 920, 921 (1978); *Estate of Kelly,* 473 Pa. 48, 373 A.2d 744 (1977); *In re Chambers Estate* 438 Pa. 22, 263 A.2d 746 (1970); *Estate of Lewis,* 407 Pa. 518, 180 A.2d 919

reasonable conclusion one may reach is that Louis Rosenberg did not contemplate that his widow would exhaust her seemingly comfortable nest egg by long-term institutionalization." From this it is argued that the testator did not intend that the assets in the trust should be utilized for long-term care of his wife.

This conclusion, however, does not follow logically and is pure speculation in any event. The record of the parties' health sheds no light on the testator's intent with regard to long-term medical care. Despite prior good health, it is obviously possible that the testator considered the possibility of declining health and the potential need for long-term care. He chose, in any case, to create a discretionary support trust for his wife to provide for her welfare, maintenance, support, and medical expenses, inter alia, which appears plainly to include long-term institutional medical care.

As for appellant's argument that the decision of the Commonwealth Court resuscitates the repudiated concept that it is shameful to accept public welfare as a form of charity, we find no such attitude reflected in the opinion of the court. To say, as the court did, that the testator "intended that the principal of the testamentary trust he established be available to his wife for her medical expenses and that he did not intend for her to rely on public assistance for her health care after his death," *Rosenberg,* 165 Pa.Cmwlth. at 14, 644 A.2d at 217, is a simple legal conclusion based on the evidence in the record. A contrary result would require a presumption that every testator intends his survivors to utilize public assistance if possible so that a testamentary trust instrument such as this must be interpreted so as to make the widow eligible for medical assistance benefits in order to maximize the inheritance of the remaindermen. Although *Lang* condemned the notion that receiving public assistance is shameful, we do not subscribe to the opposite notion, that receiving public assistance is the presumed goal of estate planning.

(1962). Only when intent is not clear will a court consider external matters, and then only matters closely related to the execution of the document. *Id.*

In conclusion, we find nothing in the record which would justify a reversal of the Commonwealth Court. Accordingly, we must affirm the judgment of the Commonwealth Court.

Judgment affirmed.

NIX, C.J., and NEWMAN, J., did not participate in the consideration or decision of this case.