**Dorothy SCHELL, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 6, 2013.
Decided Dec. 4, 2013.

S. Justin Davis, Harrisburg, for petitioner.

Addie A. Abelson, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

This case presents an issue of first impression as to whether a beneficiary's renunciation of her right to the remaining principal in a terminated residual trust, originally created by will, constitutes a transfer of assets for less than fair consideration thereby affecting her eligibility for Medical Assistance—Long Term Care (MA–LTC) benefits. Specifically, Dorothy Schell (Petitioner) petitions for review of the January 17, 2013 final administrative action order of the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA), affirming the January 11, 2013 adjudication and order of an administrative law judge (ALJ) recommending the denial of Petitioner's appeal from the determination of the Northumberland County Assistance Office (CAO) that she was ineligible for MA–LTC benefits for the period from January 28, 2011, through August 16, 2012. We affirm.

*Facts and Procedural History*

Petitioner's husband, Weston F. Schell (Decedent), died on August 28, 2001. Pursuant to the terms of Decedent's will, a trust was established on September 13, 2001, for the benefit of Petitioner.[1] Dece-

---

1. Decedent actually established two trusts in his will. Pursuant to the terms of the first trust, referred to as the Marital Trust, the trustee was directed to "set aside as a sepa-

dent named PNC Bank as the trustee. The terms of this trust, referred to as the Residuary Trust, were set forth in Item Three (b)(1) of Decedent's will, and directed the trustee as follows:

> The trustee shall set apart all property not subject to the provisions of subparagraph (a) above as a separate trust, subject to the following terms and conditions:
>
> > (1) until the death of my common law wife, DOROTHY M. SCHELL, the trustee shall pay or apply the *net income of this trust* (herein referred to as the residuary trust) *to or for the benefit of my said wife* not less often than quarter-annually and the trustee shall also pay or apply *so much of the principal of this trust to or for the benefit of my said wife* and any or all of the children born to or adopted by my said wife and myself (hereinafter referred to as my children) or their issue as the trustee in its sole and absolute discretion shall deem necessary and proper for his, her or their support, maintenance, health and education (including college and professional education), and taking into consideration a beneficiary's other resources including the availability of present or future government benefits (it should be noted that my said wife is the primary beneficiary of this trust, and her needs should be adequately provided for before any distributions are made to my children, namely CYNTHIA and WILLIAM).

(R.R. at 54a–55a) (emphasis added).

Additionally, Item Four of Decedent's will provided that *"[i]f the trustee, in its sole discretion,* determines that it is impractical to administer any fund under any trust created hereby, the trustee without further responsibility, *may pay the fund to the person then eligible to receive income therefrom* (or, in the case of any trust where there is more than one such person, to such of them and in such amounts and proportions as the trustee may think appropriate)." (R.R. at 56a) (emphasis added).

The trustee subsequently determined that it was impractical to continue to administer the trust because the primary asset of the trust was "improved real estate held by the decedent at the time of his death" and "[t]he beneficiaries have requested that the Trustee not sell the property." (R.R. at 67a.) Pursuant to these terms, the trustee exercised its discretion and decided to terminate the trust. The trust was dissolved on December 19, 2009. The total sum of the dissolved trust was $302,463.52. Pursuant to Item Four of Decedent's will, the sole person "eligible to receive income" from the trust, i.e., Petitioner, was entitled to any remaining funds in the trust. In conjunction with the termination of the trust by the trustee, Petitioner renounced her rights to any income or principal from the trust pursuant to a form entitled "Renunciation, Release,

---

rate trust an amount which will be exactly sufficient to reduce the federal estate tax falling due by reason of my death to the lowest possible figure" and to "pay or distribute the net income from the trust ... to or for the benefit of my said wife not less often than quarter-annually for the term of her natural life...." (Item Three (a)(1) of Decedent's Will, R.R. at 50a.) The terms of this trust also stated that the trustee "shall only allocate assets to this trust which qualify for the said marital deduction." (Item Three (a)(4) of Decedent's Will, R.R. at 52a.) At the time of Decedent's death, the exclusion amount under the federal estate tax was $675,000.00 and the value of Decedent's assets were far below this exclusion amount. Hence, the Marital Trust provisions were not triggered and are not at issue in the present case. The terms of the second trust will be discussed above.

Waiver of Accounting and Indemnification Agreement." (R.R. at 66a–71a.) The trustee thereafter transferred the remaining principal and funds in equal shares to Petitioner's son and daughter. (ALJ's Adjudication, Findings of Fact Nos. 3–9.)

Petitioner was later admitted to Mountain View Nursing Center (Provider) on January 28, 2011. On May 10, 2011, Provider applied for MA–LTC benefits on behalf of Petitioner effective January 28, 2011. Upon review, the CAO determined that Petitioner was eligible for benefits effective January 28, 2011, but that she had transferred a total of $302,463.52 in assets for less than fair consideration. DPW's regulations provide, in relevant part, that for all applications filed on or after March 3, 2007, if assets are disposed of for less than fair market value on or after the look-back date (for trusts, a period of 60 months from the date an applicant is both institutionalized and has applied for MA benefits), the individual will be ineligible for a period of time calculated based on the amount of assets transferred and the cost of private payment for nursing facility care. 55 Pa.Code §§ 178.104, 178.104a.

Hence, on March 30, 2012, the CAO issued Petitioner a notice of ineligibility for the period from January 28, 2011, through March 6, 2014. Petitioner appealed and also requested an undue hardship waiver. The waiver was granted because Petitioner's daughter was disabled since 2002 under criteria established by the Social Security Administration. The CAO later determined that only $151,231.76 in assets was transferred without fair consideration, thereby reducing Petitioner's ineligibility to the period from January 28, 2011, through August 16, 2012. By notice dated November 29, 2012, the CAO advised Petitioner that she was eligible for MA–LTC benefits effective August 17, 2012. (ALJ's Adjudication, Findings of Fact Nos. 1, 10–22.)

That same day, the ALJ assigned to hear Petitioner's appeal conducted a hearing. Petitioner presented several exhibits, including copies of Decedent's will and Petitioner's renunciation of the trust funds. Petitioner did not present any witnesses. Deborah Weaver (Weaver), an income maintenance caseworker, testified on behalf of DPW. Weaver testified regarding the application submitted by Provider on behalf of Petitioner, CAO's determination, and the subsequent partial grant of an undue hardship waiver. (R.R. at 174a–77a.) Weaver explained that the assets totaling $302,463.52 represented the value of the home previously owned by Decedent, $265,000.00, plus the remaining funds in the trust, $37,463.52. (R.R. at 179a–80a.) Weaver noted that ownership of the home was transferred to Decedent's children in December 2009 and the remaining trust funds were distributed to Decedent's children in April and May 2010. (R.R. at 179a, 181a.) Weaver noted that there was no documentation that Petitioner physically received any of the trust funds when the trust was dissolved, but that multiple checks were written straight from the trust to the children. (R.R. at 179a, 188a.)

After dividing the total dollar value of the assets by the daily private pay rate of $259.76, Weaver explained that Petitioner would be subject to a penalty period of 1,164 days ($302,463.52 ÷ $259.76 = 1,164.39), or 582 days if the rate were applied to the value of half of the assets. (R.R. at 183a.) Applying these 582 days to Petitioner's request, Weaver noted that Petitioner was ineligible for benefits for the period from January 28, 2011, through August 16, 2012. *Id.* Petitioner argued that the assets were not an available resource because they were part of a trust established more than five years prior to

the application for benefits. (R.R. at 206a.)

By adjudication and order dated January 11, 2013, the ALJ recommended the denial of Petitioner's appeal. The ALJ found that the designation of the type of trust had no significance as "the trust was no longer in trust form when the monies from the dissolved trust was given to [Decedent's] two children." (ALJ's Adjudication at 16.) The ALJ noted that upon termination of the trust, any principal remaining therein was payable to the person eligible to receive income therefrom, i.e., Petitioner, thereby converting the principal into an available resource. The ALJ stated that, by renouncing her rights, Petitioner simply disposed of this resource. Thus, the ALJ concluded that the CAO correctly determined that Petitioner transferred $151,231.76 in assets for less than fair consideration, rendering her ineligible for MA–LTC benefits from January 28, 2011, through August 16, 2012, and denied Petitioner's appeal. By final administrative action order dated January 17, 2013, the Chief ALJ of the BHA affirmed the ALJ's decision.

■ On appeal to this Court,[2] Petitioner argues that the BHA's decision was not supported by substantial evidence. Petitioner also argues that the BHA erred as a matter of law and/or abused its discretion in refusing to remove the penalty period for assets transferred from a trust created more than five years prior to Petitioner's admission to a nursing facility and in concluding that the trust was an available

resource. We disagree with Petitioner's arguments.

*Discussion*

The Medicaid program, enacted in 1965 as Title XIX of the Social Security Act, is a jointly funded federal-state program. 42 U.S.C. §§ 1396–1396w–5. The Medicaid program provides federal financial assistance to states that choose to provide medical services to needy persons. *See Bird v. Department of Public Welfare*, 731 A.2d 660 (Pa.Cmwlth.1999). The Commonwealth of Pennsylvania participates in the Medicaid program and offers medical assistance to pay for long-term care for eligible individuals. To establish eligibility for MA–LTC benefits, an applicant must verify that his or her resources fall below the applicable MA–LTC resource limit. 55 Pa. Code § 178.1(a).[3]

A "resource" is defined as "[r]eal or personal property which a person has or can make available for partial or total support, including equitable interests and partial interests." 55 Pa.Code § 178.2; *see also* 20 C.F.R. § 416.1201 (defining "resource" under the Social Security Act as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance"). Section 178.1(g) of DPW's regulations specifically requires that "[a]n applicant/recipient shall take reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so." 55 Pa.Code § 178.1(g).

---

**2.** Our scope of review is limited to determining whether the BHA abused its discretion, committed an error of law, or made unsupported findings of fact. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Gilroy v. Department of Public Welfare*, 946 A.2d 194 (Pa.Cmwlth.2008).

**3.** Section 178.1(a) provides that "[a]n applicant/recipient is resource eligible for MA if his total resources considered in determining resource eligibility do not exceed the MA resource limit in Appendix A for the appropriate MA Program." In the present case, the parties do not dispute that the resource limit applicable to Petitioner was $8,000.00.

Additionally, to participate in the Medicaid program, Pennsylvania is required to impose a period of ineligibility for MA–LTC benefits on institutionalized individuals who transfer assets for less than fair market value. 55 Pa.Code § 178.104; 55 Pa.Code § 178.104a; 42 U.S.C. § 1396a(a)(18).[4] "Fair Market Value" is

4. Specifically, section 178.104 of DPW's regulations provides, in pertinent part, as follows:

(a) If assets are disposed of on or after July 30, 1994, §§ 178.105 and 178.106 (relating to presumption of disposition of assets to qualify for MA for transfers on or after July 30, 1994; and reestablishment of MA eligibility after transfers made on or after July 30, 1994) and this section apply to an institutionalized individual who is applying for or receiving MA for [nursing facility care (NFC)] as defined in § 178.2 (relating to definitions), including services in an [intermediate care facility for people with mental retardation/developmental disabilities (ICF/MR)], or a level of care in an institution equivalent to NFC, or home or community-based services furnished under a Title XIX waiver and the individual or the individual's spouse transfers assets for less than [fair market value (FMV)].

(b) An institutionalized individual who disposes of assets for less than FMV on or after the look back date in subsection (c) is ineligible for MA for NFC which includes the services set forth in subsection (a). A transfer of assets by the community spouse to a person other than the institutionalized spouse is treated and affects the eligibility of the institutionalized spouse the same as a transfer by the institutionalized spouse.

(c) The *look-back date* shall be *36 months* from the date on which the individual is both institutionalized and has applied for MA, *except in the case of payments from a trust*, or portions of a trust, as described in § 178.7(e)(1)(iii) and (2)(ii) (relating to treatment of trust amounts for all categories of MA for trusts established on or after July 30, 1994) which are considered assets disposed of for less than FMV by the individual. In this instance, *the look-back date shall be 60 months*.

(d) The number of months of ineligibility for the institutionalized individual who disposes of assets for less than FMV shall be equal to the total cumulative [uncompensated value (UV)] of all assets transferred by the individual or the individual's spouse on or after the look-back date divided by the average monthly cost to a private patient of NFC in effect in the Commonwealth at the time of application.

55 Pa.Code § 178.104(a)-(d) (emphasis added).

Section 178.104a provides, in relevant part, as follows:

(a) Consistent with section 1917(c)(1)(B)(i) of the Social Security Act (42 U.S.C.A. § 1396p(c)(1)(B)(i)), regarding liens, adjustments and recoveries, and transfers of assets, effective for an application made on or after March 3, 2007, the look-back period for assets transferred on or after February 8, 2006, shall be 60 months.

(b) Consistent with section 1917(c)(1)(D) of the Social Security Act, effective for an application made on or after March 3, 2007, in the case of a transfer of assets for less than [FMV] made on or after February 8, 2006, by an applicant or spouse of an applicant, the penalty period shall commence on the date the applicant would otherwise be eligible for Medicaid based on an approved application for these services.

(c) Consistent with section 1917(c)(1)(D) of the Social Security Act, effective with transfers of assets for less than FMV made on or after March 3, 2007, by a recipient, the beginning date of a period of ineligibility for payment of long-term care services shall commence on the first day of the month following the date specified in the Appeal and Fair Hearing section of the Advance Notice provided to the recipient.

(d) Consistent with section 1917(c)(1)(E)(iv) and (H) of the Social Security Act, effective for an application made on or after March 3, 2007, a period of ineligibility for payment of long-term care services will result when an applicant or spouse of an applicant disposes of assets for less than FMV on or after February 8, 2006. The period of ineligibility shall be determined by dividing the total cumulative uncompensated value of all assets disposed of by the applicant or the applicant's spouse on or after the look-back date, by the average daily private pay rate in effect at the time the application is processed.

(e) Consistent with section 1917(c)(1)(E)(iv) and (H) of the Social Security Act, effective March 3, 2007, a period of ineligibility for payment of long-term care services will re-

defined as "[t]he price which property can be expected to sell for on the open market or would have been expected to sell for on the open market in the geographic area in which the property is located." 55 Pa. Code § 178.2. An "asset" is generally defined as any "[i]ncome and resources of the individual" and includes "income or resources which the individual or the individual's spouse is entitled to but does not receive" because of action by the individual, the individual's spouse, or a representative. *Id.*

Moreover, an institutionalized individual who transfers assets for less than fair market value during the look-back period shall be subject to a period of ineligibility for MA–LTC benefits. 55 Pa.Code § 178.104(b)-(c); 55 Pa.Code § 178.104a(a); 42 U.S.C. § 1396p(c)(1)(A), (B). The number of days of ineligibility for the institutionalized individual who disposes of assets for less than fair market value shall be equal to the total uncompensated value of all the assets transferred by the individual on or after the look-back date divided by the average daily private pay rate in a nursing facility at the time of the application for benefits. Section 441.5 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, added by the Act of July 7, 2005, P.L. 177, 62 P.S. § 441.5; 55 Pa. Code § 178.104; 55 Pa.Code § 178.104a(d); 42 U.S.C. § 1396p(c)(1)(E)(iv).

■ In the present case, while the trust was created more than five years prior to Petitioner's admission to a nursing facility, the principal in that trust did not become available to her until December 19, 2009, when the trustee opted to terminate the trust. The BHA found that the terms of

Decedent's will provided that, upon dissolution of the trust, any remaining funds therein were payable "to the person eligible to receive income therefrom" (Item Four of Decedent's Will, R.R. at 56a), and that Petitioner was entitled to these funds because she was the sole person eligible to receive income from the trust. (Item Three, Subsection (b)(1) of Decedent's Will, R.R. at 54a). Additionally, the BHA found that on the same day that the trust was dissolved, Petitioner renounced her interest or rights to any remaining income or principal from the trust.

The record supports the BHA's findings, and these findings, in turn, support the BHA's conclusion that the remaining trust funds became an available "resource" to Petitioner upon the trust's dissolution. *See* 55 Pa.Code §§ 178.1(g), 178.2; 20 C.F.R. § 416.1201. As noted above, section 178.1(g) provides that "[a]n applicant/recipient shall take reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so." Section 178.2 defines "Resource" as "[r]eal or personal property which a person has or can make available for partial or total support, including equitable interests and partial interests." Section 416.1201 of the Code of Federal Regulations similarly defines "Resources" as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201.

Contrary to Petitioner's assertion, Petitioner was not "only entitled to income under the terms of this trust." (Petition-

---

sult when a recipient disposes of assets for less than FMV on or after March 3, 2007. The period of ineligibility shall be determined by dividing the total cumulative uncompensated value of all assets disposed of

by the recipient on or after the look back date, by the average daily private pay rate in effect at the time the period of ineligibility is determined.

55 Pa.Code § 178.104a(a)-(e).

er's Brief at 27.) Once the trust was dissolved, Petitioner became entitled to any remaining income and principal therein. This income and principal was available for Petitioner to use for her support, but she made an affirmative decision not to receive the same, without any good cause explanation for so doing. Petitioner has provided no statutory or regulatory authority to conclude that the remaining income and principal from the terminated trust should not be considered an available resource. Upon Petitioner's renunciation, the trustee distributed half of the remaining income and principal from the trust, $151,231.76, to her son.[5] Petitioner received nothing in return and, thus, the BHA properly concluded that this transfer was for less than fair market value, thereby resulting in the imposition of a penalty period of 582 days.

Furthermore, we note that Petitioner's reliance on *DeBone v. Department of Public Welfare*, 929 A.2d 1219 (Pa.Cmwlth. 2007), is misplaced since *DeBone* actually supports DPW's decision in this case. In *DeBone*, we addressed the question of whether a trust created by will is a countable resource in determining a petitioner's eligibility for MA–LTC benefits. The trust at issue in *DeBone* contained nearly identical language to the trust in this case, stating that the petitioner was entitled to the net income therefrom and that the trustees may distribute "so much of the principal ... as the Trustees, in their sole discretion, deem advisable for [the petitioner's] health, maintenance and support." *Id.* at 1221. This Court ultimately held that the trust funds were a countable resource. In reaching this holding, we cited section 178.4(c) of DPW's regulations, which states as follows:

Resources held in a trust established prior to July 30, 1994, are considered resources to the applicant/recipient to the extent that the trust permits use of those resources for the applicant's/recipient's food, clothing, shelter or medical care, regardless of whether the trust is in fact used for food, clothing, shelter or medical care. Trusts established on or after July 30, 1994, are subject to § 178.7 (relating to treatment of trust amounts for all categories of MA for trusts established on or after July 30, 1994), except for trusts established by will which continue to be subject to this section.

55 Pa.Code § 178.4(c). This section is equally applicable here where Decedent established the trust in his will and directed that the trustee "shall pay or apply the net income" of the trust "to or for the benefit of" Petitioner, as well as "pay or apply so much of the principal ... to or for the benefit of" Petitioner and his children for their "support, maintenance, health and education...." (R.R. at 54a.) As in *DeBone*, it is clear that application of section 178.4(c) results in the trust's remaining income and principal being countable resources in determining Petitioner's eligibility for MA–LTC benefits.

Our Supreme Court's decision in *Estate of Rosenberg v. Department of Public Welfare*, 545 Pa. 27, 679 A.2d 767 (1996), offers further support for DPW's decision herein. In *Estate of Rosenberg*, the decedent's will contained a testamentary trust for his wife funded with $65,000.00. At the time of his death, the decedent was survived by his wife and a son, who served as the trustee. The decedent directed the trustee to pay the net income of the trust to the wife and was authorized, in his sole discretion, to

5. As noted above, Petitioner was granted an undue hardship waiver which excluded the distribution of an equal half to her daughter from consideration as an asset transferred without fair consideration.

use the principal for, *inter alia,* the welfare, support, and medical and surgical expenses of the wife. Following the death of the wife, any remainder in the trust was to pass to any living issue of the decedent, per stirpes.

Approximately eleven years after the decedent's death, his wife's health required her to enter a nursing home. At that time, the trust contained approximately $55,000.00. The wife subsequently applied for MA benefits, but DPW denied her application, concluding that the $55,000.00 was an available resource to the wife as the sole life beneficiary of the trust. This Court affirmed. On appeal, our Supreme Court noted that the case involved "the interpretation of a testamentary trust, presenting the question of whether a trustee had discretion to preserve the principal of the trust for the benefit of remaindermen rather than to expend it for the sole life beneficiary, when the latter course would, arguably, benefit only [DPW]." *Id.* at 28, 679 A.2d at 768. The Supreme Court ultimately affirmed this Court's decision. The Court described the fundamental question in these types of cases as ascertainment of the settlor's intent, as reflected in "all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument." *Id.* at 30, 679 A.2d at 769 (citation omitted).

In considering these factors, the Court noted that the decedent's wife was the sole life beneficiary of the trust and she received no public assistance during the decedent's lifetime. The Court also noted that the decedent's scheme of distribution, which included the trust as well as an outright bequeath of $157,000 to his wife that she had exhausted for medical care, was created to minimize federal estate taxation. The Court indicated that the decedent could have made his children and

grandchildren life beneficiaries of the trust along with his wife, which would have arguably precluded expending the entire trust on his wife. Additionally, the Court noted that the trust specifically provided for payment of his wife's medical expenses. Thus, the Court concluded that DPW and this Court properly held that the remaining funds in the trust were an available resource to the wife, thereby disqualifying her from MA.

In the present case, Petitioner was the sole life beneficiary of the trust created by Decedent. Clearly, as evidenced by the language of the Marital Trust, Decedent's scheme of distribution was intended to minimize federal estate taxation. The trustee was specifically authorized to utilize the principal of the trust for Petitioner's support, maintenance, and health. While the trust language includes authorization for use of the principal for the support, maintenance, health, and education of Decedent's children, the trustee was granted "absolute discretion" with respect to these decisions and it is entirely possible that the principal could have been exhausted for the benefit of Petitioner. (R.R. at 54a.) In addition, Decedent could have included his children as life beneficiaries, but he did not do so. Thus, DPW properly concluded that the remaining income and principal were an available resource to Petitioner.

*Conclusion*

Upon dissolution of the trust by the trustee, Petitioner became entitled to any remaining income and principal therein, but Petitioner renounced those rights or interests without any good cause explanation. No statutory or regulatory authority has been provided by Petitioner to conclude that the remaining income and principal should not be considered available resources as defined by DPW's regulations. As the dissolution of the trust and transfer of income and principal for less

than fair market value occurred during the look-back period, we are constrained to uphold DPW's order that Petitioner is ineligible for MA–LTC benefits for the proscribed period.

Accordingly, DPW's final administrative action order is affirmed.

### ORDER

AND NOW, this 4th day of December, 2013, the final administrative action order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated January 17, 2013, is hereby affirmed.