J-A27032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER MARTIN, INDIVIDUALLY AND AS TRUSTEE OF THE DANIEL R. PAUL & SUSAN L. PAUL IAPT 12/14/11 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 944 MDA 2021 |
| SUSAN L. PAUL, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DANIEL R. PAUL AND COREY W. MARTIN, INDIVIDUALLY AND AS TRUSTEE OF THE DANIEL R. PAUL AND SUSAN L. PAUL IAPT 12/14/11 | : : : : : : : : | |

Appeal from the Order Entered June 23, 2021
In the Court of Common Pleas of Columbia County Orphans' Court at
No(s): 2016-OC-142

BEFORE: DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: MARCH 29, 2023**

Christopher Martin ("Christopher") appeals from the September 27, 2019 order[1] removing him as trustee of the Daniel R. Paul and Susan L. Paul Irrevocable Asset Protection Trust dated 12/14/2011 ("APT") and directing that a farm property owned by the APT ("Atta Farm property" or "the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] As explained in more detail below, the orphans' court did not provide notice of entry of the September 27, 2019 order or note the same on the docket until June 23, 2021, at which point Christopher filed this timely appeal.

Property") be sold with proceeds in the amount of $278,213.71 allocated to

Susan L. Paul ("Susan") and with any excess amount returned to the APT.  We

affirm in part, vacate in part, and remand for further proceedings.

This Court has previously set forth the relevant background to this

dispute:

> Susan is the mother of Christopher and his brother, Cory W. Martin ("Cory").[2]  In 1985, Susan married Daniel R. Paul ("Daniel").  With the help of Daniel, Christopher formed Christopher A. Martin Wildlife Management, Inc. ("Company") in 2005.  Susan and Daniel purchased real property, on June 3, 2009, located on Atta Road in Stillwater, Pennsylvania [].  On July 1, 2009, Susan and Daniel entered into a five-year commercial lease contract with Christopher, individually and on behalf of the Company, to allow the Company to conduct horse boarding and related business at the Atta Farm property.  That same day, the Company began operating a horse boarding service at Atta Farm.
>
> On December 14, 2011, Susan and Daniel executed a revocable living trust agreement, the Daniel R. and Susan L. Paul Family Trust ("Family Trust").  The Family Trust named Susan and Daniel as settlors and trustees of the Family Trust.  The Family Trust contained several sub-trusts, including a Survivor's Trust and the APT.
>
> The Family Trust provided, in relevant part, as follows:
>
>> It is the primary purpose and intent of this Trust to provide for the management of the Settlors'[3] assets both presently and during any future period of disability.  This Trust Agreement is a chosen alternative preferred to guardianship or formal conservatorship proceedings that are conducted in and supervised by a court of law.  This Trust Agreement

---

[2] While Cory is a party to the action below, he has not filed a brief in this appeal.

[3] The "Settlors" are Susan and Daniel.  The "Survivor," as used in the agreement, refers to the surviving settlor.  Family Trust § 4.1.

shall serve as a simplified means of accomplishing both lifetime and death transfers of both Settlors' assets.

* * *

## ARTICLE TWO

### – Reservation of Rights –

2.1. The Settlors reserve the following rights, individually as to their respective interest in Tenants-in-Common property and as to their respective Sole and Separate property, to be exercised at any time and from time to time by a written instrument effective immediately upon its execution **during their joint lives** without consent or participation of any other person:

(a) Settlors may amend this Trust, in whole or in part, or to revoke this Trust agreement in its entirety (by a writing delivered to a Trustee other than themselves if such Trustee is serving) and to remove any or all of their respective interests in their respective property transferred to this Trust.

[* * *

(d) Settlors may direct any Trustee as to the retention, acquisition, or disposition of any Trust assets by a writing delivered to such Trustee. . . .]

* * *

2.3. **Upon the death of either Settlor**, this Trust shall be irrevocable and non-amendable subject, however, to any power of appointment, right of withdrawal or right of revocation hereinafter granted to the Survivor **concerning property held in the Survivor's Trust** as provided in Article Five.

* * *

## ARTICLE FIVE

### – Administration/Distribution of Survivor's Trust –

5.1. The Survivor shall retain full (and unhindered) general power of appointment of **all property held in the Survivor's Trust**, including the power to alter, amend or

- 3 -

revoke, in whole or in part, any and all provisions (including the revocation and appointment of any Trustee of the Survivor's Trust) concerning such property held in the Survivor's Trust.

\* \* \*

## ARTICLE EIGHT

### – Estate Distribution Upon Death of Survivor –

\* \* \*

8.1. If any of the following named beneficiaries referenced below—who are receiving separate allocation(s) of Settlors' (respective) properties—do not survive the last Settlor to die, then such allocation(s) shall be distributed as per the *remainder* Trust Estate below Section 8.2.

\* \* \*

(e) **CHRISTOPHER A. MARTIN**, Wife/Settlor's son, shall receive all interest in Wife/Settlor's property located at *34 Atta Road/Stillwater, Pennsylvania 17878.*

8.2. **CHRISTOPHER A. MARTIN & CORY W. MARTIN**, Wife/Settlor's sons, shall <u>each</u> receive **equal (1/2) portions** of the *remainder*—remaining after all of the above allocations (if any) of the Trust Estate.

\* \* \*

## ARTICLE NINE

### – Successor Trustee Appointments –

9.1. The Settlors reserve the power to remove any Trustee during their **joint lives** and to appoint other or additional Trustees not presently named as Successor Trustee at the creation of this Trust.

[9.2. The Settlors shall serve as Co-Trustees (as heretofore appointed) until . . . their death.

9.3. Upon . . . [the] death of the first Settlor to die, the other Settlor shall serve as sole Trustee. . . .]

9.4. Upon the (i) resignation or (ii) inability to serve because of a medical/mental condition causing impairment of normal administrative abilities (as evidenced by a medical certificate from his or her attending physician) or (iii) death of the surviving Settlor/Trustee then **CHRISTOPHER** [**A.**] **MARTIN** (Wife's Son) shall serve as Trustee of this Trust.

\* \* \*

## ARTICLE SEVENTEEN

## – Asset Protection Trust –

17.1. BE IT KNOWN that the Settlors affirm their right of transfer and assignment of portions or all of their property of the (preceding) Revocable Trust Estate to another individual(s) whether by a lifetime gift or by a transfer at death, outright, or IN TRUST. *To that end, it is the Settlors' intent with the funding of the following prescribed irrevocable sub-trust (of the Revocable Living Trust Estate) to preserve the principal assigned therein by vesting the same to the intended remainderman beneficiaries of this irrevocable, sub-trust component (of Settlors' Revocable Living Trust Estate) hereinafter referred to and identified as the Asset Protection Trust (APT). The primary purpose and intent of the APT is to reasonably avoid preventable governmental "spend-downs" of Settlors' estate otherwise charged for services the Settlors may qualify to receive through state-and-federal-partnered Medicaid entitlement program(s) as defined under Title XIX of the Social Security Act/42 U.S.C. § 1396 et seq.*

17.2. Settlors hereby acknowledge and exercise the right to allocate, assign, and transfer any potion or all of the principal amount of the Revocable Living Trust Estate *deemed under the revocable, general power of appointment control of the Settlors* whether in cash or in kind—or directly from the Settlors outside the Trust (and/or directly from other individuals) to this Irrevocable Asset Protection Trust (APT) (subtrust) portion described hereunder, subject to the terms of this Article. All such irrevocable transfers assigned hereto shall be deemed a part of this APT . . .

17.3. Settlors now disclaim unhindered rights to reclaim, appoint or otherwise use any principal of this APT, or that may be transferred to this APT, to or for their benefit, their

estate, their creditors, or their creditors' estate—subject, however, to the stipulations and terms otherwise provided under this Article.

17.4. **Settlors retain the right to receive all *Distributable Net Income (DNI)* of this APT for their joint lifetimes, and to the survivor of them for his/her lifetime, on at least an annual or more frequent basis**.

17.5. Subject to the stipulations and terms otherwise provided under this Article, Trustee may not reverse or re-assign any allocations of corpus/principal of this APT back to the Settlors.

17.6. NOTWITHSTANDING the above, in the event that an invasion of principal of this APT would then otherwise be allowable under Pennsylvania state (and federal) law—or under the laws of Settlors' state-of-domicile if then other than Pennsylvania—without disturbing the full asset-preservation intent of this APT and Settlors are in personal need of additional funds over and above the income distributions provided herein to adequately care for their health, safety, and reasonable comfort, then Trustee may allocate portions of principal of this APT from time to time as may be necessary or appropriate in Trustee's unhindered discretion for Settlors' benefit when such needs are not being met by the DNI amounts (or other sources of income) allowable to Settlors under the terms of this APT.

(a) In such case, Trustee may make principal distributions to enhance Settlor's provisions of food, clothing and shelter and other comforts if Trustee determines in its sole discretion that such distributions would be in Settlors' best interests but ONLY when taking into account the possible reduction or forfeiture of Medicaid (or other governmental) benefits that may result from any such distribution(s) event.

(b) In such case, Trustee is authorized to make distributions for Settlors' benefit for payments of taxes, supplemental medical or therapeutic care, furniture and furnishings, adaptive aids, benefits overpayments (if any), and other such items as might be reasonably calculated to enhance the quality of Settlors' life but only, however, if such distributions do not affect the level of the governmental aid and

entitlements that would otherwise inure to Settlors or to supplant or replace any governmental aid or other public entitlement funds that may be endowed for their benefit through the establishment of this APT. *To reaffirm: Trustee is not authorized to make any distributions for Settlors' benefit that would otherwise jeopardize Settlors' qualification to receive governmental aid benefits.*

\* \* \*

17.7. . . .

\* \* \*

(c) NOW THEREFORE, any and all such assets/funds/real estate transferred from the Revocable Living Trust to the APT or directly to the APT outside of the Revocable Living Trust Estate shall be transferred and assigned to [Christopher, as the Trustee of the APT.]

\* \* \*

17.9. . . .

\* \* \*

(b) The vested beneficiary(s) of the APT, the proportionate, distributable amounts of income . . . shall be defined, determined and designated as provided in Article Eight (*supra*) of this Trust as amended thereto but **irrevocably vested**, notwithstanding subsequent amendments to said Trust, as to the initial funding date of this APT.

\* \* \*

17.10. The APT beneficiary(s) so designated to receive portions or all of Settlors' revocable Trust Estate and portions or all of Settlors' irrevocable APT Trust Estate (as per this Article) shall be determined and identified as provided in Article Eight (*supra*) and such **designation(s) shall become <u>irrevocable</u>** as pertaining to the assets of this APT upon the initial funding of the APT.

[Family Trust, Preamble, §§ 2.1, 2.3, 5.1, 8.1-2, 9.1-4, 17.1-7, 17.9-10 (some emphasis in original; some emphasis added).]

On February 27, 2012, Susan and Daniel executed a deed conveying the Atta Farm property to Christopher, as trustee of the APT, and put the Atta Farm property in the APT, pursuant to the Family Trust provisions. After Daniel died testate on May 30, 2013, Susan administered Daniel's estate as its personal representative. Following Daniel's death, the relationship between Susan and Christopher deteriorated, resulting once in police intervention for an alleged theft.

On September 10, 2013, Susan ostensibly executed a Restatement of the Family Trust ("Restated Trust"). . . .

In large part, the terms of the Restated Trust are substantially and materially the same as the terms of the original Family Trust. The most striking change accomplished by the Restated Trust, however, was to remove Christopher as trustee and to name Cory successor trustee of the Restated Trust and trustee of the APT. Notwithstanding the preamble set forth in the Restated Trust, Susan essentially "modified" the original Family Trust/APT to remove Christopher as trustee of the APT and name Cory as new trustee of the APT.

Acting on his new position, Cory executed a quit claim deed on August 3, 2014, purporting to transfer the Atta Farm property from [Cory, as trustee of the APT, to Susan and Daniel, as trustees of the Family Trust.] Subsequently, Susan executed a quit claim deed on July 6, 2015, appearing to transfer the Atta Farm property from [Susan, as surviving trustee of the Family Trust to Cory, as trustee of the APT.]

On August 17, 2016, Christopher filed a petition against Susan and Cory to remove Cory as the trustee of the APT and direct that the Atta Farm property remain an asset of the APT. . . . [D]uring a status conference, Susan and Cory indicated they wanted to sell the Atta Farm property and place the proceeds of the sale into investments for the benefit of Christopher, if the court determined he was entitled to those proceeds.

The court conducted a bench trial on July 13, 2017, during which it heard testimony from, *inter alia*, Christopher[ and] Susan . . . . At trial, Christopher testified on his own behalf that he had a falling out with Susan in the 1990's or 2000, after which he did not speak to Susan and Daniel for ten or eleven years. Christopher said he

reconnected with Susan and Daniel approximately in 2008, when he moved in with them. After Susan and Daniel purchased the Atta Farm property, Christopher and his wife lived at Atta Farm while the Company operated a horse boarding business on the farm.

Christopher again had a falling out with Susan after Daniel died. While Christopher and his wife were still living on the Atta Farm property, Christopher's brother, Cory, removed a flatbed trailer from the farm property. Christopher reported the incident to the police, who found the trailer at the residence of Susan, with whom Cory lived, and arrested Susan and Cory for stealing the equipment. Christopher did not renew the lease on Atta Farm and received a notice from Susan's counsel in September 2014, to vacate the property in thirty days. By October 7, 2014, Christopher and his wife left the Atta Farm property.

Susan also testified at trial. Susan said she and Christopher had a tumultuous relationship. They fell out in 1993, after which they did not speak again until 2009. In January 2012, Susan attempted to punch Christopher after the two had a verbal altercation. In early 2013, Christopher put out to pasture one of Susan's horses boarded at Atta Farm, because Susan had been late several times to pay the $ 450.00 monthly boarding fee. After Daniel died in May 2013, Christopher would not speak to Susan. Susan explained she believed she owned the trailer that Cory had taken from the Atta Farm property in May 2014. Susan stated Christopher reported the incident to police and had Susan and Cory arrested, even though Christopher knew they merely intended to borrow the trailer. In September 2014, Susan sent Christopher an eviction notice. . .

Susan acknowledged she formed the Restated Trust in September 2013, to remove Christopher as trustee of the APT and replace him with Cory as trustee. Susan claimed the August 3, 2014 quit claim deed purporting to transfer the Atta Farm property from the APT to her, as trustee of the Family Trust, was just a mistake, because she knew she could not remove an asset from the APT which was also an irrevocable trust. Susan said she ameliorated the error when she executed the July 6, 2015 quit claim deed, appearing to convey the Atta Farm property to Cory, as trustee of the APT. Susan explained she had intended to keep the Atta Farm property in the APT, despite the Restated Trust and the 2014 quit claim deed. . .

- 9 -

. . . On January 2, 2018, the [o]rphans' [c]ourt entered an opinion and verdict, which declared the Atta Farm property irrevocably part of the APT. The decision then [stated] that "Christopher had an irrevocable vested interest in the Atta Farm once the property [was] transferred to the [APT and that o]wnership of the Atta Farm [property] must properly be transferred to Christopher."

***Martin v. Paul*** ("***Martin I***"), No. 118 MDA 2018, 2019 WL 1490572, at \*1-7 (Pa. Super. April 3, 2019) (unpublished memorandum) (footnote and record citations omitted; references to parties and other key individuals modified for readability).

Susan filed an appeal from the January 2, 2018 order, challenging the orphans' court award of immediate ownership of the Property to Christopher as well as the court's failure to rule on her requests to remove Christopher as trustee for the APT and to compel a sale of the Property. In the initial appeal, we determined that we could not address Susan's issues related to Christopher's removal and the sale of the Property, because the orphans' court had not yet ruled on them. ***Id.*** at \*8. We did reach Susan's argument concerning the court's transfer of title of the Property to Christopher, finding that, under the APT, Christopher would become owner of the Property when Susan dies, while Susan was entitled, as the surviving settlor, to regular lifetime distributions of income generated from APT assets. ***Id.*** at \*8-10. We thus concluded that the orphans' court improperly awarded title of the Property to Christopher as his "role regarding the Atta Farm property is limited to trustee with a vested beneficial interest in the APT," while we also rejected Susan's argument that she had an ownership interest in the Property as she

- 10 -

was only a lifetime beneficiary. *Id.* at *10-11. We therefore vacated the court's order and remanded for clarification or correction on the issue of ownership of the Property and for further proceedings on Susan's requests that Christopher be removed as trustee and the Property be sold. *Id.* at *11.

Following oral argument and the submission of briefs, the orphans' court issued an order and accompanying opinion on September 27, 2019, providing for Christopher's removal as trustee of the APT, the sale of the Property, and the reimbursement of $278,213.71 from the sale to Susan with any remainder to the APT. Opinion and Order, 9/27/19, at 4-5. In its Pa.R.A.P. 1925(a) opinion, the court clarified that it ordered the sale of the Property and reimbursement to Susan pursuant to its power to modify a trust based upon circumstances that were not anticipated by the settlor under Section 7740.2(a) of the Pennsylvania Uniform Trust Act ("UTA"), 20 Pa.C.S. § 7740.2(a). Rule 1925(a) Opinion, 12/30/21, at 3-4. The court further opined that Christopher's removal as trustee was appropriate under Section 7766(b)(1)-(3) of the UTA, 20 Pa.C.S. § 7766(b)(1)-(3), because he committed a serious breach of the trust, failed to effectively administer the trust through unfitness, unwillingness, and persistent failures, and as a result of his lack of cooperation with Susan. Rule 1925(a) Opinion, 12/30/21, at 6-7.

On appeal,[4] Christopher presents the following issues for our review:

I. Did the lower court exceed its authority vested by 20 Pa.C.S.[ §] 7740.2(a) and (c) when it modified a noncharitable irrevocable trust and directed the trust be distributed in a manner which not only defeats its primary purpose, but in a manner that is expressly prohibited by the terms [of the] trust?

II. Did the lower court commit error by modifying a noncharitable irrevocable trust without the consent of all beneficiaries in a manner which does not protect the interests of the irrevocably vested remainder beneficiary as required by 20 Pa.C.S.[ §] 7740.1(d)(2)?

III. Did the lower court commit an error of law and/or an abuse of discretion when the court (1) declined to rule on the appellant's request to remove a purported trustee who had been acting on behalf of the trust [and] (2) cite[d], among other things, to actions of the disputed trustee in removing the appellant as trustee under 20 Pa.C.S.[ §] 7766?

IV. Did the lower court [commit] error by exceeding its authority in 20 Pa.C.S.[ §]7781(b) and 20 Pa.C.S.[ §]7766(c) to remedy an alleged breach of trust when it invade[d] an irrevocable noncharitable trust and direct[ed] $278,213.71 be reimbursed to the settlor?

_____

[4] Christopher did not immediately appeal from the September 27, 2019 order and instead filed an application for leave to appeal *nunc pro tunc* on January 21, 2020. The orphans' court denied the petition on May 14, 2020, and Christopher appealed from that order. On appeal, this Court ruled that the lower court prothonotary did not provide notice of entry of the September 27, 2019 order and specify on the docket that notice was given as required by Pa.R.Civ.P. 236. **Martin v. Paul** ("**Martin II**"), No. 823 MDA 2020, 2021 WL 1886067, at *3 (Pa. Super. May 11, 2021) (unpublished memorandum). We therefore vacated the denial of *nunc pro tunc* relief and remanded for the prothonotary to docket the September 27, 2019 order in full compliance with Rule 236 so that Christopher could refile his appeal. **Id.** at *3-4. On June 23, 2021, following remand, the prothonotary noted on the docket that proper notice of the September 27, 2019 order was given. Christopher then timely filed the appeal presently before this Court.

Christopher's Brief at 4 (unnecessary capitalization, emphasis, and suggested answers omitted).

"When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." ***In re Trust Created Under the Will of Cohen***, 188 A.3d 1208, 1210 (Pa. Super. 2018) (citation and brackets omitted). Furthermore,

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.

***In re Jackson Charitable Trust***, 174 A.3d 14, 23 (Pa. Super. 2017) (citation omitted).

The interpretation of a trust presents a question of law as to which our standard of review is *de novo,* and our scope of review is plenary. ***Id.*** at 29. The pole star in interpreting trusts is the settlor's intent, which must be ascertained from the language of the trust. ***Id.*** A court must give effect, to the extent possible, to all words and clauses in the trust document and shall not resort to canons of trust construction except where the language of the trust is ambiguous or conflicting and the settlor's intent cannot be garnered from the plain language. ***Id.***; ***In re Estate of Loucks***, 148 A.3d 780, 782 (Pa. Super. 2016).

We first address Christopher's third issue in which he challenges his removal as trustee of the APT. Christopher asserts that the APT, by its own terms, only permitted removal of the trustee during the settlors' joint lives, and therefore Susan lacked authority to place his brother, Cory, in the role of the APT trustee, which she purported to do in the Restated Trust of September 10, 2013, executed several months after Daniel's death. Christopher notes that, in his 2016 petition that initiated this case, he raised the issue of whether Cory was properly appointed as trustee, and yet the orphans' court declined to rule on his request in its most recent order. Furthermore, Christopher contends that the lower court improperly based his removal on the fact that he did not make all of the payments required under his lease to the Property, as well as his 2014 eviction from the Property by Susan, even though Susan and Daniel had always represented to him that they would remain responsible for the mortgage, taxes, and insurance on the Property.

Removal of a trustee is governed by Section 7766(b) of the UTA, which provides as follows:

> **(b) When court may remove trustee.--**The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not inconsistent with a material purpose of the trust, a suitable cotrustee or successor trustee is available and:
>
>> (1) the trustee has committed a serious breach of trust;
>>
>> (2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

- 14 -

(3) the trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or persistent failures; or

(4) there has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

20 Pa.C.S. § 7766(b).

The orphans' court found that grounds for Christopher's removal existed under subsection (b)(1), (2), and (3), based upon Christopher's serious breach of the trust, his lack of cooperation with his cotrustee, and his unfitness, unwillingness, and persistent failures in the administration of the APT. Rule 1925(a) Opinion, 12/30/21, at 6-7. The court specifically found that Christopher was "incapable or unwilling to perform his fiduciary duties," he "failed to make even one payment towards the mortgage" or "make any profit" from the farm, and his relationship with Susan was so strained that it resulted in physical altercations, an eviction, and Susan's arrest. *Id.*; *see also* Opinion and Order, 9/27/19, at 4-5. The court further concluded that removing Christopher as trustee was in the best interests of the beneficiaries of the APT and that it was not inconsistent with the purpose of the APT. Opinion and Order, 9/27/19, at 4-5.

Upon review, we initially agree with Christopher that Susan lacked authority to remove him as trustee of the APT and place Cory in that position, which she purported to do in the Restated Trust executed in September 2013. Pursuant to the Family Trust, the settlors only had authority to remove a

trustee and appoint a successor trustee "during their joint lives." Family Trust § 9.1; *cf. id.* § 5.1 (providing that surviving settlor had authority to remove the trustee of the Survivor's Trust). When Daniel died in May 2013, Susan, as the surviving settlor, thus lost any ability to remove and replace Christopher as trustee. The Restated Trust's substitution of Christopher with Cory as trustee of the APT accordingly had no legal effect, a fact that this Court acknowledged in our initial decision in this matter. *See Martin I*, 2019 WL 1490572, at *5, 10 & n.1 (stating that Christopher remained APT trustee as of the date of our 2019 decision and that Susan lacked authority to modify the APT to remove Christopher). While the orphans' court did not specifically address the issue, the lower court implicitly recognized that Christopher, not Cory, was the APT trustee at the time of its decision by ruling on Susan's request that Christopher be removed as trustee and not addressing Christopher's alternate claim that Cory should be removed.

Turning to the merits of Christopher's removal, we agree with the orphans' court's determination that grounds for removal existed under Section 7766(b)(3), which requires that "the trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or persistent failures." 20 Pa.C.S. § 7766(b)(3).[5] The record here shows Christopher's

---

[5] The lower court found that Christopher's removal was proper under subsection (b)(1), (2), and (3); however, we discuss only subsection (b)(3) as the statute only requires that any one of the paragraphs under subsection (b) be satisfied. 20 Pa.C.S. § 7766(b).

*(Footnote Continued Next Page)*

almost complete unwillingness to undertake any acts to fulfill his role as trustee of the APT. *See* 20 Pa.C.S. § 7766, Uniform Law Comment (describing a trustee's "unwillingness" to include "cases where the trustee refuses to act" as well as "a pattern of indifference to some or all of the beneficiaries"); ***see also Trust Under Agreement of Taylor***, 164 A.3d 1147, 1159-60 (Pa. 2017) (courts may rely on commentary of drafters of Uniform Trust Code in interpreting UTA). The Family Trust was established in December 2011, and the Property was transferred by deed to him as trustee of the APT, in February 2012. N.T., 7/13/17, at 41, 50-51; Christopher's Exhibit 18. At the time of the transfer of the Property into the APT, Christopher resided at and ran a horse boarding business at the Property pursuant to a five-year lease executed in July 2009 with Susan and Daniel as landlords. Christopher's Exhibit 7. After the transfer of the Property to the APT, Christopher never entered into a new lease for the Property, and, instead, he continued to act as if Daniel and Susan (and ultimately Susan, after Daniel's May 2013 death) were the landlords and owners of the Property, with Christopher eventually being "evicted" by Susan in October 2014. N.T., 7/13/17, at 41-42, 106, 125-26.

---

Furthermore, we note that our analysis of Christopher's role as APT trustee is complicated by the fact that Christopher acted in two other roles relevant to this case, as the proprietor of the horse boarding business being run on the Property and in his status as a vested remainder beneficiary of the APT assets. We focus here on Christopher's role as trustee, but that necessarily entails our review of his decision to allow himself to persist in his money-losing business on the Property and consideration of the threat his actions caused to his remainder interest in the trust.

While Daniel and Susan also bear some responsibility for their continued attempts to control the Property following its transfer into the APT, Christopher made no effort to fulfill his duties as trustee of the APT during the period when he was living on the Property. A trustee has the duty of prudent administration of a trust, that is the trustee "shall administer the trust as a prudent person would, by considering the purposes, provisions, distributional requirements and other circumstances of the trust and by exercising reasonable care, skill and caution." 20 Pa.C.S. § 7774. Furthermore, a trustee must "take reasonable steps to take control of and protect the trust property." 20 Pa.C.S. § 7779; *see also In the Matter of Estate of Campbell*, 692 A.2d 1098, 1102 (Pa. Super. 1997) (trustee has duty of "receiv[ing] trust property and administer[ing] it") (citation omitted). Christopher was aware of the Family Trust, as well as his role as the trustee of the APT, at the date of the trust's execution in December 2011, and he was also contemporaneously informed by Daniel that the Property was being transferred to him, as trustee. N.T., 7/13/17, at 101-03. However, Christopher never "really pa[id] attention to [his status as trustee and the transfer of the Property] because . . . it's my mom and my [step-]dad, why would I worry about such things?" *Id.* at 103; *see also id.* at 127 (stating that he was "the guy with the shovel" who did not pay attention to "[a]ll these papers and stuff"). Christopher thus made no attempt "to take control of and protect the [] property" of the APT, nor did he exercise "reasonable care, skill and caution" in administering the APT. 20 Pa.C.S. §§ 7774, 7779.

Christopher also failed to take action to preserve the APT's assets for the benefit of both beneficiaries of the trust, Susan as the lifetime beneficiary who was entitled to regular lifetime distributions from that trust, and Christopher as the remainder beneficiary of the APT assets. As our Supreme Court has explained, "a trustee's interest [in the trust] is in performing the agreed duty to administer the trust assets for the benefit of the beneficiaries in accordance with the terms established by the settlor." **In re Trust Under Deed of Walter R. Garrison**, Nos. 61-63 MAP 2022, ____ A.3d ____ (Pa., filed January 19, 2023), slip op. at 9. "The primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal," as measured by the standard of what an ordinary prudent investor would maintain in the care of their own estate. **In re Estate of Warden**, 2 A.3d 565, 573 (Pa. Super. 2010) (citation omitted). "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing and distributing the trust property, giving due regard to the beneficiaries' respective interests in light of the purposes of the trust." 20 Pa.C.S. § 7773; **see also In re Scheidmantel**, 868 A.2d 464, 482 (Pa. Super. 2005) ("Subject to the specific language of the trust instrument, a trustee acting consistently with the law of Pennsylvania must exercise discretion in preserving the balance of interests between successive beneficiaries.") (citation omitted).

Here, Christopher admitted that, during the period he resided on the Property, he never paid the $2,000 rent, real estate taxes or insurance for the

business, nor did he contribute to the payment of the mortgage; instead, his only financial contribution was for repairs and some of the equipment used for the horse boarding business. N.T., 7/13/17, at 34-35, 39-40, 96-98, 128, 155. Susan reiterated that she and Daniel were responsible for paying the mortgage, taxes, and insurance on the Property during the entire time that Christopher ran the business without any contribution from her son. *Id.* at 154-55, 176, 184-85. In addition, Daniel made substantial financial contributions towards the business, loaning the corporation formed to run the business more than $230,000 during the years of the business's existence. *Id.* at 135, 139-41, 143-44. The corporation had accumulated losses of approximately $321,000 over the years (with losses of $75,537, $38,297, and $13,295 in 2012, 2013, and 2014, respectively), showing that the business was "underwater," according to the business's accountant. *Id.* at 114-16, 132-33, 135-36. Furthermore, although Christopher only worked briefly at the grocery store Daniel owned in 2008 and 2009, the store continued to pay Christopher $400 per month after he left the job and through the date of his eviction from the Property in October 2014. *Id.* at 103-04, 157-58. Based upon the failure of the property to generate income, Susan ultimately decided to take the proceeds from one of Daniel's life insurance policies and pay off the balance of the mortgage on the property. *Id.* at 174, 176.

The record thus shows that Christopher, as trustee, did not take sufficient actions to preserve and manage the Property for his or Susan's benefit, as the beneficiaries. The horse boarding business was never

profitable, and there was no apparent pathway for the business to become profitable. Furthermore, rather than Susan receiving "all Distributable Net Income [] of th[e] APT" during her lifetime, Family Trust § 17.4 (emphasis omitted), she and Daniel were compelled to subsidize Christopher's business during its entire existence. Christopher also did not act to protect his remainder interest in the APT that would have afforded him the opportunity to inherit the Property following Susan's death. Without an established viable business in place, Christopher was destined to rely on Susan's continuing subsidies, which she was under no obligation to provide.

We therefore concur in the orphans' court's finding that Christopher did "not effectively administer[] the trust because of [his] unfitness, unwillingness or persistent failures." 20 Pa.C.S. § 7766(b)(3). However, Section 7766 imposes three additional requirements before removal may be ordered; the court must additionally find that (1) "removal of the trustee best serves the interests of the beneficiaries of the trust"; (2) removal "is not inconsistent with a material purpose of the trust"; and (3) "a suitable cotrustee or successor trustee is available." 20 Pa.C.S. § 7766(b); *Taylor*, 164 A.3d at 1157. Here, the orphans' court made findings that the first two requirements were met, *see* Opinion and Order, 9/27/19, at 4-5, and we agree that his removal serves the interests of the beneficiaries based upon Christopher's track record of administering the trust and that his removal was not inconsistent with a material purpose of the trust.

- 21 -

However, the orphans' court did not make a finding that "a suitable [] successor trustee is available" to replace Christopher. 20 Pa.C.S. § 7766(b). As discussed above, although Susan attempted to name Cory, her other son, as the APT trustee in 2013, this appointment was without legal effect. Furthermore, in the order and opinions under review, the orphans' court did not address whether Cory could adequately serve as Christopher's replacement. Therefore, we are constrained to vacate the orphans' court order to the extent it removed Christopher as trustee of the APT. We remand for the lower court to make a finding whether "a suitable [] successor trustee is available," *id.*; if the court determines that there is a suitable successor, then the court may order Christopher's removal and name the successor trustee.

We now turn to Christopher's remaining appellate issues, in which he challenges the modification of the APT to permit the sale of the Property and the return of a portion of the proceeds of the sale to Susan. Christopher first argues that modification was improper under Section 7740.2(a) of the UTA,[6]

_____

[6] Christopher also argues that the orphans' court violated Section 7740.1 of the UTA because his interest as a nonconsenting beneficiary was not "adequately protected." **See** 20 Pa.C.S. § 7740.1(d)(2). We disagree. The structure of the UTA, as well as the language of the related commentary, make clear that Section 7740.2—the orphans' court's stated grounds for modification—and Section 7740.1 are among several alternate, independent grounds for modification or termination of a trust. **See generally** 20 Pa.C.S. §§ 7740.1-7740.6; **see also** 20 Pa.C.S. § 7740(b) (listing available statutory remedies for modification or termination); 20 Pa.C.S. § 7740.1, Uniform Law Comment (distinguishing grounds for termination or modification under
*(Footnote Continued Next Page)*

noting that Susan and Daniel's "primary purpose and intent" in creating the APT was "to reasonably avoid preventable governmental 'spend-downs' of Settlors' estate otherwise charged for services the Settlors may qualify to receive through state-and-federal-partnered Medicaid entitlement program(s)[.]" Family Trust § 17.1 (emphasis omitted). Christopher asserts that, by allowing Susan to regain access to Property placed into the APT, she would be potentially forced to spend down those assets to become eligible for Medicaid Long-Term Care benefits or that she would be rendered temporarily ineligible for benefits based upon a less-than-fair-market value transfer within the program's 60-month look-back period.[7] Christopher further argues that the ordered return of $278,213.71 from the proceeds of the sale of the Property was in error as it directly contradicted the asset-protection purpose

---

Section 7740.1 from Section 7740.2 and other sections). Nothing in the language of any of the relevant UTA provisions, or related caselaw, indicates that a court proceeding with modification under Section 7740.2 must also comply with the requirements of Section 7740.1.

[7] *See* 55 Pa. Code § 178.104a (establishing look-back period pursuant to the federal Social Security Act); *Brenckman v. Department of Human Services*, 222 A.3d 38, 43 (Pa. Cmwlth. 2019) (when an applicant has transferred or disposed of assets for less than fair market value during the look-back period, they will be "disqualified from receiving [Medicaid] for a period equal to the number of months of average nursing home care that the transferred assets could have purchased") (citation omitted); *Schell v. Department of Public Welfare*, 80 A.3d 844, 848-52 (Pa. Cmwlth. 2013) (stating that, to establish Medicaid Long-Term Care eligibility, applicant's resources must fall under certain threshold and further that asset in trust can constitute a countable recourse in certain circumstances).

of the trust and that it disregarded his vested beneficial interest in the Property.[8]

Under Section 7740.2 of the UTA, a court is authorized to modify a noncharitable irrevocable trust based upon unanticipated circumstances:

> The court may modify the administrative or dispositive provisions of a noncharitable irrevocable trust, make an allowance from the principal of the trust or terminate the trust if, because of circumstances that apparently were not anticipated by the settlor, modification, allowance or termination will further the purposes of the trust. To the extent practicable, the modification or allowance shall approximate the settlor's probable intention.

20 Pa.C.S. § 7740.2(a). The comment to the statute provides that courts are authorized to "apply equitable deviation" to modify "inopportune details to effectuate better the settlor's broader purposes" and that unanticipated circumstances that will support modification may include the "failure [of the settlor] to anticipate economic change." 20 Pa.C.S. § 7740.2, Uniform Law Comment. "While it is necessary that there be circumstances not anticipated by the settlor before the court may grant relief [], the circumstances may have been in existence when the trust was created." *Id.* Moreover, we note

---

[8] Christopher also argues that the orphans' court did not have authority to order the return of $278,213.71 as a remedy for his breach of trust under Section 7781 of the UTA. *See* 20 Pa.C.S. § 7781(b) (listing remedies that a court may order for a trustee's breach of trust). However, the lower court did not cite Section 7781, nor did it base its decision on a breach of trust by Christopher; instead, the court relied on its authority to modify the trust under Section 7740.2 and directed that the sum be paid to Susan as "reimbursement" for the mortgage and other expenses on the property. Opinion and Order, 9/27/19, at 5.

that the court's ability to modify a trust under Section 7740.2 is broader than under prior Pennsylvania law, which required "a finding that the settlor's original purpose 'cannot be carried out or is impractical of fulfillment.'" 20 Pa.C.S. § 7740.2, Joint State Government Commission's Comment to UTA (quoting 20 Pa.C.S. § 6102 (repealed)); 1 Pa.C.S. § 1939 (drafting commission's comments may be consulted in construction of statute).

The orphans' court determined that modification of the APT to permit the sale of the Property was appropriate under Section 7740.2(a), because the settlors could not have anticipated the fact that the Property would not generate income or even be self-sustaining. Rule 1925(a) Opinion, 12/30/21, at 3-4. The court found that Christopher's actions of "not making a payment toward the mortgage, taxes, or insurance [of the Property], all of which were required as part of the lease agreement that [Christopher] signed" frustrated the primary asset-protection purpose of the APT. *Id.* at 3. As the court explained, if the Property "were to remain part of the trust, it will be more likely that it will succumb to a tax sale than become property of [Christopher as remainder beneficiary] due to [his] failure to make the required payments." *Id.* The court found that "the only reason the [Property] has not been foreclosed upon . . . is due to [Susan] paying the balance of the mortgage." *Id.* at 4.

In addition, the orphans' court found that Christopher's actions frustrated the second purpose of the APT to provide Susan, as the surviving settlor, with the net income from the APT assets during her lifetime. *Id.* at 3.

The court found that Christopher's actions led to the trust producing no income—and therefore no distributions to Susan—and further opined that, if the Property remained in the trust, any revenue generated from the farm would only be spent on upkeep rather than providing income to Susan. *Id.* at 3-4. Finally, "based upon the fact that the entire mortgage was paid by [Susan], when [it] should have been paid from income from [Christopher's] Horse Farm . . . and said payments were only made in an attempt to save the" Property, the court determined that Susan "must be reimbursed from [the ordered] sale [of the Property] in the amount she paid." *Id.* at 4.

We find no abuse of discretion in the orphans' court modification of the APT to permit the sale of the Property and the reimbursement of $278,213.71 from the sale to Susan. The "circumstances . . . not anticipated by the settlor[s]," 20 Pa.C.S. § 7740.2(a), that permit modification in this case are the fact that the Property did not become self-supporting under Christopher's management. As explained above, Christopher never paid rent on the Property when it was subject to a lease, nor did he ever contribute to the payment of the mortgage, real estate taxes, or insurance after the Property became an APT asset. The business was reliant on loans to stay afloat, including more than $230,000 from Daniel. Moreover, there was no testimony at the hearing that the horse boarding business was on a path to solvency, nor was evidence offered that any other business could be operated on the Property that would allow it to be self-sufficient. Therefore, the Property was to remain a financial drain for Susan for however long Christopher remained

on the Property and continued to do so after he vacated.[9]  While Daniel and Susan were aware when they created the APT that they would need to support Christopher in establishing his business, they could not have been aware how extensive and how open-ended that financial backing would have to be.  ***See*** 20 Pa.C.S. § 7740.2, Uniform Law Comment (stating that while the circumstances that support modification must be unanticipated, they may have been in existence when the trust was created).

In addition, the record supports the court's finding that Susan's use of the proceeds from Daniel's life insurance policy was made for the purpose of preventing foreclosure on the Property.  ***See*** Rule 1925(a) Opinion, 12/30/21, at 4; N.T., 7/13/17, at 174, 176.  While the court acknowledged evidence showing that the policy was taken out with the intention to pay off the balance of the mortgage when Daniel died, the court observed that Susan's testimony established that it was only necessary for her to use those funds—which were paid to her individually, rather than into the trust—based upon Christopher's inability to turn his business into one that could at least cover the mortgage payments after he had filled the barn with horses.  ***See*** Rule 1925(a) Opinion, 12/30/21, at 4; N.T., 7/13/17, at 176, 183-84, 186.

---

[9] Susan testified at the 2017 hearing that she had continued to pay the insurance and taxes on the property, as well as for necessary repairs, such as a new furnace, since Christopher vacated the property.  N.T., 7/13/17, at 181.  Furthermore, at a 2019 oral argument, Susan's attorney represented that she had been continuing to pay the insurance and taxes from her personal funds.  N.T., 6/4/19, at 10.

Furthermore, the modification "will further the purposes of the" APT. 20 Pa.C.S. § 7740.2(a). While Christopher correctly identifies the design of the APT to shield the settlors' assets from potential Medicaid spend-down, the APT also served the purpose of transferring the Property from the settlors to Christopher and "preserv[ing] the principal assigned [in the APT and] vesting the same to the intended remainderman beneficiar[y]." Family Trust § 17.1 (emphasis omitted). Due to mismanagement, the Property has been and continues to be reliant on Susan's financial support, which she is under no obligation to provide. Permitting the sale of the Property would "preserve the principal" of the APT, *id.*, and would allow Christopher, as the remainderman, to derive some benefit from the Property rather than allowing it to "succumb to a tax sale." Rule 1925(a) Opinion, 12/30/21, at 3. Moreover, while the reimbursement of $278,213.71 from the Property's sale does run counter to the APT's purpose of shielding the settlors' assets from Medicaid as the funds would be an available resource for Susan and subject to a potential spend down before she would be eligible for Medicaid benefits,[10] the reimbursement only replaced funds Susan would have otherwise retained had Christopher administered the Property such that the mortgage did not need to be paid off.

---

[10] **See Schell**, 80 A.3d at 848 (discussing the resource limit that cannot be exceeded when applying for Medicaid Long-Term Care benefits). It does not appear that the return of funds from the sale to Susan would trigger the 60-month look-back period under the Medicaid program as it would not involve a less-than-fair-market-value transfer by Susan.

Accordingly, we affirm the orphans' court's September 27, 2019 order to the extent it modifies the APT to allow for the sale of the Property and the reimbursement of $278,213.71 to Susan. Furthermore, as discussed above, we vacate the removal of Christopher as trustee and remand for consideration of whether there exists a suitable successor trustee and, if the court answers that question in the affirmative, to authorize Christopher's removal and appoint his replacement.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2023